TIMOTHY TRAUTMAN *v*. CITY OF STAMFORD ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 150458
AT BRIDGEPORT

Memorandum filed June 30, 1975

*Willis & Willis,* for the plaintiff.

*Joel E. Freedman,* corporation counsel, *J. Robert Bromley,* and *Fraser, Bello & Lapine,* for the named defendant et al.

SADEN, J. The plaintiff's complaint alleges that he was seriously injured after being struck by an automobile while standing on a public sidewalk in the city of Stamford. He alleges that the injuries and damages sustained by him were the result of the negligence of the defendants Joseph Coviello and Henry Crawford, two patrolmen employed by the city of Stamford, in that they allowed automobile drag racing to occur in their presence for a substantial period of time on the street adjacent to the sidewalk on which plaintiff stood when they knew or should have known, in the exercise of due care, that such activity could cause injury; in that they failed to stop such drag racing when they knew that such activity in public was a violation of ordinance and statute; in that they failed to disperse the persons congregating on the public sidewalk or to arrest the participants of the drag races when

they had the authority and the duty to do so; in that they failed to warn the public lawfully using the sidewalk of the danger involved; and in that they failed properly and adequately to control and supervise the street in accordance with their duties as police officers although they knew or should have known that to allow drag racing to occur upon the public highway in the presence of the public constituted a hazard.

In his second count, directed against the city of Stamford, the plaintiff incorporates the same allegations and concludes that as a result of the actions of the defendant patrolmen the city is liable in damages for the plaintiff's physical injuries in accordance with General Statutes § 7-465.

The defendant patrolmen demur to the first count, claiming that insofar as it purports to state a cause of action in negligence, the alleged breach of duty is one owed to the public generally rather than to the plaintiff individually and, therefore, the first count must fail. The defendant city demurs to the second count, claiming that if the patrolmen owe no duty to the plaintiff individually and therefore cannot be held liable to him in this negligence action, no recovery against the city can be had pursuant to General Statutes § 7-465.

The court agrees with the plaintiff that the essential test of patrolmen's accountability, as explained in *Leger* v. *Kelley,* 142 Conn. 585, is whether the duty alleged to have been violated by them is one owing to plaintiff individually rather than to him as a member of the public generally. Because *Leger* involved a determination of the liability of a public official for his failure to perform a precise, statutorily defined ministerial act, the court's actual holding cannot be considered as controlling in the present case. On the other hand, in

*Stiebitz* v. *Mahoney,* 144 Conn. 443, 448, the extensive discretion in the performance of his governmental duty to select and supervise the policemen in his department rendered the chief of police immune from suit so long as his official acts were done "in good faith, in the exercise of an honest judgment, and not in abuse of . . . discretion, or maliciously or wantonly," quoting from *Wadsworth* v. *Middletown,* 94 Conn. 435, 439. The court in *Stiebitz* points out (p. 447) that there is a shadowy line, difficult to trace, that separates the duties owed to the general public from those owed to individuals. On the allegations of that case asserting that defendant Mahoney, a police officer, stopped a car in which the two plaintiff women were riding and at the point of a gun and under threat of death to them, forced the operator to drive to a secluded spot where he handcuffed them and committed acts constituting a battery, an indecent assault, attempted rape, and armed robbery, the duty to appoint proper persons to the police force and to remove and suspend officers who might indulge "in such outrageous acts" as defendant Mahoney is alleged to have committed, was a duty owed both to the general public and every individual "who might come in contact with such officers." Id., 447. Nevertheless, liability of the defendant Schendel, chief of police, who had the authority to appoint, suspend, and discharge officers, within his sound discretion, does not attach for his failure to act if his judgment is merely negligent and not malicious or wanton.

It is clear that the issue in *Stiebitz* concerned solely the liability of the chief of police, not the police officer himself who allegedly indulged in the outrageous conduct toward the two plaintiffs individually. It is also clear that the allegations of the instant case nowhere assert any conduct directed specifically by the defendant police officers

toward the plaintiff individually. The conduct of the defendant patrolmen is directed, according to the plaintiff's allegations, toward the general public of which the plaintiff happened to be a part at the time in question. *Stiebitz,* therefore, even if the court were to accept its dictum as the law of Connecticut, because of its highly specialized facts, presented a possible duty owed to the individual plaintiffs on the part of the chief of police only of a most limited variety, i.e., not to act maliciously or wantonly.

In the present case the allegations present essentially a claim of negligence against the defendant officers for failure to enforce the law prohibiting drag racing. In fact the first count specifically alleges that the defendant officers were not guilty of any wilful or wanton act resulting in the plaintiff's injuries, an allegation which would seem to remove the case from the operation of the dictum in *Stiebitz.* That allegation, of course, was necessary to hold the defendant city responsible for damages under General Statutes § 7-465. But in so doing the limited basis upon which it might be asserted that *Stiebitz* operates is effectively eliminated from the case, and the court is left with nothing more than a claim of negligence.

The case most pertinent to the present inquiry, in which plaintiffs' allegations were, if anything, more supportive of his position on demurrer than are the present plaintiff's allegations, is *Massengill* v. *Yuma County,* 104 Ariz. 518. There the plaintiffs sought to recover in wrongful death and personal injury actions against a sheriff and his deputy for their alleged negligent failure to attempt to arrest certain motorists operating recklessly and while under the influence of liquor in spite of the fact that the officers clearly observed the motorists' operation and had ample opportunity to arrest them. The

Arizona Supreme Court, basing its decision on the determination that the duty of the defendants was (p. 523) "patently one owed to the general public, not to the individual plaintiffs," adopted (p. 521) the rule set forth in *Leger* v. *Kelley,* supra, and first enunciated in 2 Cooley, Torts (4th Ed.) § 300: "The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages." The court in *Massengill,* supra, 521, noted further that before an officer could be liable for an omission, his obligation to act must be absolute, specific, and imperative, and the duty must have been one owing to the person injured by the officer's nonfeasance. 2 Shearman & Redfield, Negligence (Rev. Ed.) § 328; see *Budrow* v. *Lynch,* 7 Conn. Sup. 320.

In adopting the public-duty/private-duty test, *Massengill* does not rest on those cases involving either ministerial on the one hand or discretionary duties on the other, but rather on those cases in which the plaintiff was owed a special duty by the defendant because of the defendant's specific relationship with the plaintiff. This is consistent with Professor Cooley's assertion that the discretionary-ministerial distinction is not the true test of defendant's accountability. 2 Cooley, Torts (4th Ed.) § 300. As *Massengill,* supra, 523, pointed out there are situations where a government or one of its agencies can by its conduct narrow an obligation owing to the general public into a special duty owed

to an individual, but the allegations of the plaintiff's complaint here do not present such a fact picture. That concept can perhaps be best observed in *Schuster* v. *New York*, 5 N.Y.2d 75, where the plaintiff's intestate, Schuster, responded to widely published notices of the police calling for all private citizens to report to public authorities the whereabouts of one Willie Sutton, a nationally sought criminal. As a result of Schuster's well publicized assistance, the criminal was apprehended and Schuster was shot to death three weeks later after receiving threats on his life. Those threats were reported to the authorities who made light of them and refused the protection which Schuster had demanded. The court held for the plaintiff, ruling that a reciprocal duty arose on the part of the authorities to use reasonable care in providing police protection for the plaintiff's intestate. The police actively sought help from individuals and created a relationship out of which a duty to act, i.e., to provide protection, arose.

The court holds that, under the allegations of the plaintiff's complaint and in view of the law applicable to the facts contained therein, the duty allegedly breached by the defendant patrolmen was clearly one owed to the general public and not to the plaintiff individually. As a result, the plaintiff's complaint lacks an essential element. The demurrers of the defendants Coviello and Crawford to the plaintiff's first count are sustained. Additionally, the demurrer of the city of Stamford to the plaintiff's second count is likewise sustained. See *Kostyal* v. *Cass*, 163 Conn. 92, 97; *Martyn* v. *Donlin*, 151 Conn. 402, 405; *Bailey* v. *Stratford*, 29 Conn. Sup. 73, 75; *Boucher* v. *Fuhlbruck*, 26 Conn. Sup. 79, 82.