75378. FERGUSON v. CITY OF DORAVILLE et al.
75379. CITY OF DORAVILLE v. FERGUSON.
75380. RIFFE v. FERGUSON.
(367 SE2d 551)

BANKE, Presiding Judge.

William H. Ferguson brought suit against the City of Doraville and an as yet unidentified Doraville police officer to recover for personal injuries which he sustained when he was struck by an automobile while attempting to walk across a seven-lane highway at night in a highly intoxicated condition. Ferguson later amended his complaint to substitute Doraville police lieutenant Robert Riffe for the unidentified "John Doe" defendant named in the complaint. Both defendants counterclaimed pursuant to OCGA § 9-15-14 and *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986), based on allegations that Ferguson's claim was substantially frivolous, substantially groundless, and substantially vexatious. Ferguson responded to these counterclaims by amending his complaint to assert abusive litigation claims against the defendants, thereby prompting Lt. Riffe to amend his counterclaim to assert an additional abusive litigation claim against Ferguson. The trial court granted summary judgment to the defendants with respect to Ferguson's personal injury claim but granted summary judgment to Ferguson with respect to the defendants' counterclaims. These appeals followed.

The relevant facts are, for the most part, undisputed. At approximately 12:25 a.m. on March 2, 1986, Lt. Riffe observed Ferguson asleep behind the wheel of a parked car on the premises of a "fast-food" restaurant located alongside the highway. Ferguson had pulled into the parking lot of this restaurant to sleep after attempting to drive home from a bar and realizing he was, in his words, "too drunk" to do so. Lt. Riffe approached Ferguson's vehicle, opened the door, and asked for and obtained Ferguson's driver's license. After determining that the vehicle was not stolen, he then instructed Ferguson not to attempt to drive the car. Ferguson's specific recollection of what Lt. Riffe told him was as follows: "He said something to the effect that I had better make a phone call and get somebody to come get me because he wasn't going to baby-sit me. He said anybody could have opened this door; I just did; and you better not move this damn car." Lt. Riffe's recollection of his instructions to Ferguson was somewhat different. He testified that he told Ferguson it would be "fine" if he wished to stay in the car and sleep but to "lock the doors and roll the windows partially up so he wouldn't get mugged."

Lt. Riffe left the scene immediately after this encounter, having made no attempt to take Ferguson into custody or to secure the keys to his vehicle. Ferguson subsequently left his vehicle and walked to the other side of the highway, where he entered a bar/lounge called the Lemon Peel. While inside, he telephoned his wife to ask her to come and pick him up and consumed at least two more drinks while waiting for her. He ultimately grew tired of waiting, left the bar and attempted to walk back across the highway. In the process, he was struck and severely injured by an unidentified hit-and-run motorist. The accident occurred at approximately 2:50 a.m., or about two-and-a-half hours after his encounter with Lt. Riffe. Ferguson's blood-alcohol content upon his arrival at the hospital for treatment following the accident was .29 percent.

Ferguson alleged in his complaint that his injuries were the proximate result of Lt. Riffe's breach of a "mandatory duty to arrest one who has operated a motor vehicle while under the influence of an intoxicant." He sought to hold the City of Doraville liable under the doctrine of respondeat superior, asserting that the defense of sovereign immunity had been waived to the extent of certain liability insurance purchased by the city. The trial court did not reach the immunity issue but granted summary judgment to the defendants based on a conclusion that no actionable breach of duty had occurred. On appeal, Ferguson no longer contends that Lt. Riffe breached a legal duty to arrest him but instead contends that the officer's instructions to him imposed a sufficient restraint on his freedom that he could be considered to have been under the officer's constructive care and custody at the time of the accident. *Held*:

1. Even accepting as accurate Ferguson's version of what Lt. Riffe told him during their encounter, it is apparent that the officer placed him under no greater restrictions with respect to the operation of his automobile than he was already under by virtue of the general criminal prohibition against driving a motor vehicle while under the influence of alcohol. See OCGA § 40-6-391 (a). By no reasonable stretch of the imagination could it be inferred from any of the evidence in this case that Ferguson was under actual or constructive police custody at any time relevant to these proceedings.

With regard to Ferguson's original theory of liability, i.e., that Lt. Riffe breached a mandatory duty to make an arrest, we observe that it is by no means evident that Lt. Riffe was authorized to make an arrest under the circumstances. It is no crime merely to be intoxicated, see OCGA § 16-14-41, nor is it a crime merely to occupy a parked automobile while under the influence of alcohol. See generally OCGA § 40-6-391 (a); *Carr v. State*, 169 Ga. App. 679 (314 SE2d 694) (1984). Thus, it is certainly conceivable that had Lt. Riffe in fact arrested Ferguson, he would thereby have subjected himself to suit for

false arrest or false imprisonment rather than for negligence. As observed by former Chief Justice Warren in *Pierson v. Ray*, 386 U. S. 547, 555 (87 SC 1213, 18 LE2d 288) (1967), overruled on other grounds in *Harlow v. Fitzgerald*, 457 U. S. 800 (102 SC 2727, 73 LE2d 396) (1982), "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does."

It being apparent without dispute from the uncontroverted evidence of record in this case that Lt. Riffe did nothing to restrict Ferguson's liberty, expose him to greater danger, or otherwise adversely affect his position, we must agree with the trial court that the officer acquired no legal duty to protect him either from the consequences of his own behavior or from the negligence of others. See generally *Ficken v. Southern Cotton Oil Co.*, 40 Ga. App. 841 (1) (151 SE 688) (1929); *Handiboe v. McCarthy*, 114 Ga. App. 541, 543 (3) (151 SE2d 905) (1966). Accord *Barratt v. Burlingham*, 492 A2d 1219 (R.I. 1985); *Hildenbrand v. Cox*, 369 NW2d 411 (Iowa 1985). Cf. *Hostetler v. Ward*, 41 Wash. App. 343 (704 P2d 1193) (1985); *Trautman v. City of Stamford*, 32 Conn.Sup. 258 (350 A2d 782) (1975). Compare *Thomas v. Williams*, 105 Ga. App. 321, 326 (3) (124 SE2d 409) (1962). We accordingly hold that the trial court did not err in granting summary judgment to the defendants with respect to Ferguson's personal injury claim.

2. The issue of whether the trial court erred in granting summary judgment to Ferguson on the defendants' counterclaims is more problematical, thrusting us unavoidably into mind-numbing battle with the many-headed hydra of "abusive litigation" law.

(a) Subsection (a) of OCGA § 9-15-14 mandates that "reasonable and necessary attorney's fees and expenses of litigation *shall* be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." (Emphasis supplied.) Subsection (b), on the other hand, provides that "[t]he court *may* assess reasonable and necessary attorney's fees and expenses of litigation . . . if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification. . . ."[1]

It would appear from the Supreme Court's decision in *Yost v.*

---

[1] The term "lacked substantial justification" is defined by OCGA § 9-15-14 (b) to mean "substantially frivolous, substantially groundless, or substantially vexatious."

*Torok*, 256 Ga. 92, supra, that either of the above specified types of litigation abuse will also support a recovery of damages in tort. Id. at 96 (13). However, the elements of such a recovery are entirely different. Whereas the Code section provides solely for the assessment of "reasonable and necessary attorney's fees and expenses of litigation," the damages recoverable under *Yost* consist of "special damages *other than* attorney fees and expenses of litigation; damages for mental distress, where there is either wilfulness, or wanton and reckless disregard of consequences which is the equivalent of wilfulness [cit.]; or nominal damages pursuant to OCGA § 51-12-4." Id. at 95 (10).[2]

The remedy available under the Code section also differs from that available under *Yost* in at least two other important regards. First, the precepts of *Yost*, being founded upon the ruins of the pre-existing torts of malicious use and abuse of process, have been held to be retroactive. See *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790 (359 SE2d 920) (1987). The remedy created by the Code section, on the other hand, is available only with respect to "any claim, defense, or other position which is first raised in an action on or after July 1, 1986." Ga. L. 1986, pp. 1591, 1593, § 3. With regard to abusive litigation claims arising prior to July 1, 1986, the Supreme Court specified in *Yost* that "the recoverability of attorney fees and expenses of litigation must be determined by [pre-]existing principles of law." Id. at 96 (17). However, pre-existing law avails the defendants in the present case very little, because prior to the effective date of OCGA § 9-15-14, the general recoverability of expenses of litigation (including attorney fees) in civil actions was governed by OCGA § 13-6-11, which was not available to a defendant in the absence of a "viable independent counterclaim[ ] asserting [a] claim[ ] for relief independent of the assertion of the [plaintiff's] harassment, litigiousness and bad faith in bringing . . . suit[ ]." *Fla. Rock Indus. v. Smith*, 163 Ga. App. 361, 363 (3) (294 SE2d 553) (1982).

A final respect in which the remedy created by § 9-15-14 differs from the remedy announced in *Yost* lies in the procedure for adjudicating claims thereunder. Claims asserted pursuant to the Code section are to be adjudicated by the trial court without a jury, see OCGA § 9-15-14 (f), whereas claims asserted under *Yost* are to be adjudicated immediately after the disposition of the underlying action "by the *same* factfinder — that is, by the judge or jury of the underlying action." Id. at 96 (15).[3]

---

[2] In a footnote to the foregoing language, the Supreme Court specified that "[p]unitive damages . . . are excluded as the tort itself is designed as a deterrent. [Cits.]" Id. at fn. 3.

[3] Presumably, this does not mean that where, as here, the underlying action is adjudicated adversely to the plaintiff by the trial judge on motion for summary judgment, the plaintiff thereby loses the right to a trial by jury on the defendant's *Yost* claim.

(b) The original complaint in this case was filed on June 6, 1986, and was thus subject to the precepts of *Yost* but not to those of OCGA § 9-15-14. It follows that neither of the defendants is entitled to assert a claim for attorney fees and expenses of litigation on the basis of the original complaint. However, Lt. Riffe was not identified by name in the original complaint, and it was not until after July 1, 1986, that Ferguson amended his pleadings to identify the officer as the John Doe defendant referred to in the original complaint. Since it was not until then that Lt. Riffe was called upon to defend the suit, which sought an assessment of damages against him personally in excess of $6,750,000, we conclude that in filing this amendment Ferguson asserted a "position" against Lt. Riffe which was "first raised in the action on or after July 1, 1986." Accordingly, we hold that Lt. Riffe was entitled to assert a counterclaim pursuant to § 9-15-14 for litigation expenses and attorney fees reasonably incurred in responding to Ferguson's original personal injury claim but that the city was not entitled to seek such a recovery. However, we hold that both defendants may seek recovery of litigation expenses and attorney fees reasonably incurred in responding to Ferguson's abusive litigation claims, since those claims were, with respect to both defendants, first asserted by Ferguson in amendments filed subsequent to July 1, 1986.

(c) We now turn to the question of whether the trial court was authorized to conclude as a matter of law from the evidence of record that Ferguson could not be held liable in damages for abusive litigation.

This court has previously cautioned that "zealous favoring of abusive litigation allegations can create a bar to access to the courts for civil litigants." *Guernsey Petroleum Corp. v. Data Gen. Corp.*, supra, 183 Ga. App. at 796. Such overzealousness could be particularly discouraging to litigants who are compelled to argue for a change in existing law in order to obtain just redress for their grievances. Abusive-litigation litigation is itself subject to abuse, and we must constantly be on our guard not to allow it to become a source of stagnation or inflexibility in our jurisprudence, i.e., to become the "tail that wags the dog." On the other hand, these remedies were created in response to a very real need, and we should not shrink from enforcing them where their application is appropriate.

With these considerations in mind, we ask ourselves whether the evidence of record, construed in this instance most favorably towards the defendants as respondents on motion for summary judgment, see *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971), establishes as a matter of law a reasonable justification for Ferguson's claims. We conclude that it does not. In the first place, it is something of an affront to common sense for Ferguson to argue that Lt. Riffe was the proximate cause of his (Ferguson's) own conduct in continu-

ing to consume alcoholic beverages to the point where, some two-and-a-half hours after his encounter with the officer, his blood-alcohol content reached .29 percent. Ferguson was, after all, laboring under no legal incapacity or disability which would relieve him of responsibility for his own behavior. Cf. *Knight v. State*, 12 Ga. App. 111 (3) (76 SE 1047) (1913).

Considerations of proximate cause aside, a jury might also legitimately question the reasonableness of charging Lt. Riffe with the breach of a duty owed to Ferguson in the first instance. There is clearly no existing statutory, constitutional or common law basis in Georgia for the assertion of a right to be arrested. Cf. *Blackwell v. State*, 139 Ga. App. 477, 478 (3) (228 SE2d 612) (1976). Even with respect to claims brought by third persons to recover for injuries suffered at the hands of lawbreakers, it is generally held that "the specific duty to preserve the peace is one which the officer owes to the public generally, and not to particular individuals, and that the breach of such duty accordingly creates no liability on the part of the officer to an individual who was damaged by the lawbreaker's conduct." Anno.: Personal Liability of Policeman [etc.] for Injury Suffered as a Result of Failure to Enforce Law or Arrest Lawbreaker, 41 ALR3d 700, p. 703, § 2.

In ruling that Ferguson was entitled to summary judgment on the defendants' counterclaims, the trial court did not actually determine that a reasonable basis or substantial justification existed for Ferguson's complaint but instead reasoned as follows: "Although this action is highly unusual, if not bizarre, the extensive research of the plaintiff into the law of other jurisdictions and the absence of any Georgia law on point leads this court to conclude that plaintiff was raising justiciable issues in good faith." In concluding that the exercise of good faith would insulate Ferguson from liability for bringing a frivolous claim, the trial court was evidently relying on subsection (c) of OCGA § 9-15-14, which provides as follows: "No attorney or party shall be assessed attorney's fees as to any claim or defense which the court determines was asserted by said attorney or party in a good faith attempt to establish a new theory of law in Georgia *if such new theory of law is based on some recognized precedential or persuasive authority*." (Emphasis supplied.)

We cannot agree that § 9-15-14 (c) operates to insulate Ferguson from liability in this case, for two reasons. First, the subsection is applicable on its face only to claims for attorney fees and not to expenses of litigation or to the types of damages available under *Yost v. Torok*. Secondly, the foreign authorities cited by Ferguson do not provide arguable support for his claim. In *Parvi v. City of Kingston*, 41 NY2d 553 (362 NE2d 960) (1977), for example, the plaintiff's claim was upheld on the basis of evidence that the police had taken him

into custody while he was in an inebriated condition, transported him outside the city limits, and deposited him against his will at a location near a superhighway, from whence he had been forced to try to find his way home on foot. As previously emphasized, there is no similar evidence in the present case to suggest that Lt. Riffe adversely affected Ferguson's position in any way. Compare *Thomas v. Williams*, 105 Ga. App. 321 (124 SE2d 409). Thus, Ferguson's contention on appeal that "there is no difference of substance" between his situation and that of the plaintiff in *Parvi* is transparently without merit.

Ferguson's reliance on *Endy v. Village of Nyack*, 576 FSupp. 1562 (SD NY 1984), is similarly misplaced. The decision there was not issued by an appellate court but was merely a ruling by a trial judge denying a motion to dismiss for failure to state a claim. The issue before us in the present case is not whether Ferguson's complaint stated a claim on which relief could be granted (i.e., whether there was any conceivable state of facts which might have supported a recovery within the framework of the complaint) but whether there was any justification for charging the defendants with liability for his injuries on the basis of the facts as they actually existed. Whereas the complaint in *Endy* alleged that the defendant municipality's police officers "took custody" of the plaintiff's decedent by appropriating his car keys while he was in a helpless condition and leaving him in his automobile to die, the evidence in the present case reveals without dispute that the plaintiff was lucid and capable of responding to questions at the time the officer spoke to him, that he was not sick, wounded, or otherwise in need of immediate medical attention, and that his position was not adversely affected in any way by his encounter with the police.

The holding in *Weldy v. Town of Kingston*, 514 A2d 1257 (NH 1986), similarly establishes no basis for recovery under the facts of the present case. There, the police had stopped a car full of teenagers and then let them go, after having determined that they were unlawfully transporting and consuming alcoholic beverages. Concluding on the basis of New Hampshire law that the officers had breached a statutory and common law duty to make an arrest for a crime committed in their presence, the court held that the occupants of the vehicle could recover against the municipality for injuries which they later sustained when their vehicle was involved in an accident due to the then driver's intoxication. This holding represents perhaps the most extreme example of a nascent tendency in some jurisdictions to hold municipalities liable to third persons for injuries caused by the negligent failure of police officers to remove from the streets drivers who are under the influence of alcohol. See, e.g., *Irwin v. Town of Ware*, 392 Mass. 745 (467 NE2d 1292) (1984); Anno.: Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government

Unit or Officer, 48 ALR 4th 320, 345-348, §§ 11 & 12. However, even if such a theory of liability were adopted in Georgia, it would avail the plaintiff in the present case nothing, for, as previously indicated in Division 1, supra, it is far from evident that Lt. Riffe would have been authorized to arrest Ferguson at any time during their encounter. See generally OCGA § 17-4-20; *Croker v. State*, 114 Ga. App. 492, 494 (1) (151 SE2d 846) (1966). We know of no jurisdiction which would *require* a police officer to expose himself to suit for false arrest or false imprisonment by making an arrest under such circumstances. Moreover, Ferguson did not injure another traveler as the result of his inebriation. If he injured anyone, it was himself.

In summary, while it would appear that the research conducted by Ferguson's counsel has been thorough, and while we have no reason to doubt that his pursuance of the present action has been characterized by good faith in a subjective sense, we are left at the end with nothing which could be said to establish as a matter of law a reasonable or substantial justification for Ferguson's claims. Consequently, we are constrained to hold that the trial court erred in granting summary judgment to Ferguson with respect to the defendants' counterclaims. However, inasmuch as we have previously concluded that the city has no right of recovery pursuant to OCGA § 9-15-14 based on Ferguson's personal injury claim, the city will, with respect to that claim, be entitled to pursue only those elements of recovery authorized by *Yost v. Torok*, 256 Ga. 92, supra. There being no suggestion that the city has incurred any special damages as the result of this litigation other than litigation expenses and attorney fees, and it appearing obvious that a corporate body is incapable of suffering mental distress, this means that the city will, with respect to its cause of action for abusive litigation arising from Ferguson's original claim, be limited to a recovery of nominal damages. Id. at 95 (10).

*Judgment affirmed in Case No. 75378. Judgment reversed in Case Nos. 75379 and 75380. Birdsong, C. J., Carley, Sognier, Pope, and Beasley, JJ., concur. McMurray, P. J., concurs in judgment only. Deen, P. J., and Benham, J., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

It is difficult to agree with all that is said in the majority opinion as to "problematical, thrusting us . . . into mind-numbing battle . . . many-headed hydra . . . tail that wags the dog . . . nascent tendency" as applied to abusive litigation counterclaims, and with the position of dissent offered for the purpose of easing "the collective mind of the bench and bar." I do agree, however, with the result and basic rationale advanced in Judge Benham's concurrence in part and dissent in part.

438

BENHAM, Judge, concurring in part and dissenting in part.

While in full accord with Division 1 of the majority opinion, I am compelled to dissent from Division 2 due to its rejection of a good faith defense to a claim based upon the Supreme Court's decision in *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986).

The trial court granted summary judgment to Ferguson on the *Yost* and OCGA § 9-15-14 counterclaims after concluding that "plaintiff was raising justiciable issues in good faith." The majority surmises that the trial court applied OCGA § 9-15-14 (c) and, while acknowledging that pursuance of the case by Ferguson's counsel "has been characterized by good faith in a subjective sense," holds that the good faith concept contained in OCGA § 9-15-14 (c) is not applicable to a *Yost* suit. The majority goes on to distinguish the case at bar from the cases cited by Ferguson's counsel, and concludes that Ferguson did not present "arguable support" for his claim.

In *Yost v. Torok*, supra, the Supreme Court adopted the legislative language of OCGA § 9-15-14 to define the single cause of action now called abusive litigation. The Supreme Court "re-define[d] the elements of the common-law claim" by liberally borrowing from OCGA § 9-15-14 (a) and (b). Its failure to include language from § 9-15-14 (c) should not be read as a rejection of the concepts contained therein, but recognized as logical since subsection (c) does not contain terms defining the substance of the tort of abusive litigation. Instead, it contains what can only be termed a defense: should it be determined by the court that a claim or defense was asserted by an attorney or a party "in a good faith attempt to establish a new theory of law in Georgia if such new theory of law is based on some recognized precedential or persuasive authority," attorney fees will not be assessed. Following the lead of the Supreme Court, I would adopt the legislative language of OCGA § 9-15-14 (c) and hold that potential tort liability for abusive litigation is negated if the factfinder determines the claim or defense was asserted in a good faith attempt to establish a new theory of law in Georgia if such new theory is based on some recognized precedential or persuasive authority.

The failure to recognize a "good faith defense" to a *Yost* claim, a claim which exposes its defendants to potential liability greater than that under OCGA § 9-15-14, creates an atmosphere of stagnation within the law by inhibiting attorneys from taking a case that requires the presentation of a novel approach to the law in Georgia. The studied development of the law will be stymied should counsel fear to suggest change because the shadow of a *Yost* claim looms over them. Without establishing good faith as a defense to a *Yost* claim, development of the law will grind to a halt, and the State of Georgia will be the worse for it.

After holding that OCGA § 9-15-14 (c) is not applicable to a *Yost*

claim, the majority goes on to distinguish each of the several foreign authorities cited by Ferguson in support of his position, and concludes that they "do not provide arguable support for his claim." Majority opinion, p. 435. Ferguson's inability to present a previously-decided case factually identical to the one at bar should not expose him to liability for abusive litigation. The fact that Ferguson, in good faith (as recognized by the majority), presented case law establishing a springboard from which a court of this State could leap should it choose to extend the existing law of Georgia should insulate Ferguson from *Yost* liability. The ability of the court to distinguish Ferguson's authority should not vitiate his good faith. If that authority can be seen as stepping stones leading toward recognition of Ferguson's theory, it should be accepted as "precedential or persuasive authority" (OCGA § 9-15-14 (c)), insulating the proponent from abusive litigation rather than rejected as distinguishable and subjecting the party to a penalty for proposing a novel approach. While I agree with the majority that Ferguson's claims against the City of Doraville and Lt. Riffe cannot withstand motions for summary judgment under Georgia law as it presently stands, I am not willing to condemn Ferguson or his counsel for filing the suit recognized as having been brought in good faith.

Had a position such as that now espoused by the majority been taken by the state and federal appellate courts at an earlier time, we might still be grappling with notions such as "separate but equal" (*Brown v. Bd. of Education*, 347 U. S. 483 (74 SC 686, 98 LE 873) (1954)); the husband as the head of the household (*Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979)); the imposition of the death penalty for armed robbery (*Gregg v. Ga.*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976)); unlimited sovereign immunity (*McCafferty v. Medical College of Ga.*, 249 Ga. 62 (287 SE2d 171) (1982)); as well as malicious use of process and malicious abuse of process (*Yost v. Torok*, supra). These notions have fallen to the wayside as the law evolved, championed by attorneys who were willing to take on an uphill struggle in pursuit of an ideal whose time had come but had not yet been recognized. While it has been acknowledged that "zealous favoring of abusive litigation allegations can create a bar to access to the courts for civil litigants" (*Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790 (4) (359 SE2d 920) (1987)), we must do more than recognize danger — we must establish its parameters. The trial courts of this State have been the *Yost* battlefield up to this point. They, as exemplified by the judge in the case at bar, have attempted to curb abusive litigation while giving parties and counsel the latitude necessary to foster an atmosphere in which the law progresses due to the presentation of novel positions. I propose that we, as an appellate court, ease the collective mind of the bench and bar by applying the

legislative language of OCGA § 9-15-14 (c) to *Yost* claims.

ON MOTION FOR REHEARING.

On motion for rehearing, counsel for the plaintiff argues that he should not be penalized for making "a good faith argument for an extension, modification, or reversal of the law," since such advocacy is expressly authorized by Ethical Consideration 7-4 of the Code of Professional Responsibility adopted by the State Bar of Georgia. Interestingly, counsel omits any reference to the remaining language of this provision, which is as follows: "However, a lawyer is not justified in asserting a position in litigation that is frivolous."

The damages authorized by OCGA § 9-15-14 and, to a lesser extent, those authorized by *Yost v. Torok*, supra, are intended not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with claims, defenses, or other positions "with respect to which there exist[s] such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Id. For the reasons stated in our original opinion, we are unable to conclude as a matter of law that the plaintiff's claim in this case falls outside that category. The motion for rehearing is consequently denied.

DECIDED JANUARY 13, 1988 —
REHEARING DENIED MARCH 18, 1988 —

*Michael L. Wetzel*, for Ferguson.
*James C. Watkins, Edward E. Carter*, for City of Doraville.
*Edward W. McCrimmon*, for Riffe.