A90A1672. VERTNER v. GERBER et al.
(402 SE2d 315)

Sognier, Chief Judge.

Mitchell Vertner brought suit against Fulton County; four county employees, Robert Gerber, W. C. Austin, Al Pierce, and Carl Smithwick; and Gregory Smith, a county prison inmate, to recover damages for injuries incurred when he was attacked by Smith. The trial court granted summary judgment to the county and the four county employees on the grounds of sovereign and official immunity, and Vertner appeals that ruling with regard to the individual defendants.

The record reveals that during the relevant time period, appellee Austin was deputy warden of the Alpharetta Correctional & Rehabilitation Center of the Fulton County correctional system (the "ACRC"). Appellee Gerber was director of the county Department of Planning & Community Development, which provided trash trucks and drivers to the ACRC to be used for inmate work details, and appellee Smithwick was a trash truck driver employed by the department. Appellee Pierce was included as a defendant in the lawsuit in his capacity as successor to the warden of the county correctional system at the time of the incident at issue. The ACRC housed county inmates serving sentences for misdemeanor offenses as well as some state inmates, but held no prisoners classified by the State as maximum security. In May 1985, Gregory Smith was a county inmate serving a 12 month sentence for criminal damage to property, a misdemeanor.

In his deposition, Austin described the procedure followed by the ACRC in processing new inmates and assigning them to work details. He explained that all inmates underwent a medical checkup at Bellwood, a central facility, which then transferred a report to the ACRC indicating the extent to which the inmate was physically capable of serving on work crews. The ACRC also received a form detailing the personal history of the inmate. All other information in inmates' files, including the complete report from the medical checkup, was retained at Bellwood pursuant to established correctional system procedure. Based on information gleaned from the reports he received and an interview with the incoming inmate, Austin then assigned inmates to an appropriate work crew for work to be performed outside the institution.

The history sheet transmitted to the ACRC on May 7, 1985 concerning Smith stated that he had been incarcerated five times previously, but did not indicate the offenses for which he was convicted. His medical classification authorized work "without restrictions." Smith's complete file, which was retained at Bellwood, revealed that he had been diagnosed as a chronic paranoid schizophrenic and that a

dose of 1200 mg of thorazine per day had been prescribed for him. Austin testified he had been aware Smith was on some sort of medication, but did not know either the diagnosis or the type of medicine. After reviewing the available records and interviewing Smith, Austin assigned him to a trash truck detail run by Smithwick.

On May 24, 1985, Smithwick, who was not authorized to carry a weapon, left the ACRC with Smith and another inmate to pick up trash along the roadside in a residential area. Smith apparently became enraged by a directive given by Smithwick and began chasing Smithwick, threatening him with a pitchfork. When Smithwick ran to a nearby house to summon help, Smith followed. Appellant was servicing the air conditioning unit outside the house. Smith accosted appellant, threw him to the ground, and stabbed him in the head with the pitchfork, injuring him severely.

It is undisputed that Fulton County has no liability insurance coverage for this incident and thus cannot be held to have waived its sovereign immunity. See Ga. Const. 1983, Art. I, Sec. II, Par. IX. Nonetheless, the Supreme Court recently held in *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990) that a county employee may be held liable for the negligent performance of a ministerial act or the willful and malicious performance of a discretionary act even if the county has not waived its immunity through the purchase of liability insurance. Appellant contends appellees negligently performed the ministerial duty of assigning Smith to a work detail and negligently failed to provide an armed guard, and that the trial court erred by concluding these acts were discretionary.

A government employee who is invested with discretion and empowered to exercise his judgment in the course of execution of his duties is considered a quasi-judicial officer, and is immune from liability when performing discretionary tasks that are within the scope of his employment and are not wilful, malicious, or corrupt. *Hennessy v. Webb*, 245 Ga. 329, 330-331 (264 SE2d 878) (1980). The question whether a duty is ministerial or discretionary turns on the character of the specific act, not the general nature of the official's position. Id.; see *Shuman v. Dyess*, 175 Ga. App. 213, 216 (333 SE2d 379) (1985). " 'A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' [Cit.]" *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990).

The record in the instant case shows that the correctional system's warden, represented in this action by Pierce, delegated to Austin the task of reviewing information provided about the inmates,

conducting his own examination of them, and then determining their work crew assignment. There is no evidence to suggest that he merely followed established guidelines in making these assignments; instead, his unrebutted testimony indicated that he evaluated and weighed the information available and made decisions based on his judgment and experience. We agree with appellees that these acts were analogous to those of the prison warden in *Price v. Owen*, 67 Ga. App. 58 (19 SE2d 529) (1942), whose actions in supervising the performance of inmate work crews were held to be discretionary. Although appellant alleges that Smith's file indicates he was designated under the State Board of Offender Rehabilitation regulations as an inmate needing "close" supervision, Austin testified that the state security classification system was used only for state inmates in county custody, and that the designation of a county inmate as "close" meant that he was serving a 12 month sentence. Similarly, Austin's decision not to send an armed correctional officer with the trash crews was an exercise of his judgment, and there is no evidence that the state regulation concerning armed guards referenced by appellant in his brief applies to county prisoners. Even if appellant's allegations can be construed to allege negligence of any appellee in the failure to request or provide the ACRC with inmates' complete files, that decision also required the exercise of personal deliberation and judgment. Moreover, contrary to appellant's arguments in his brief, there is no evidence in the record to suggest that appellees' actions were wilful or malicious.

Since we have determined that the challenged acts of the warden and Austin were discretionary, and there is no evidence Gerber and Smithwick participated in any decisions at issue, we affirm the trial court's grant of summary judgment.

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 6, 1991 —
REHEARING DENIED FEBRUARY 21, 1991 — 

*Jordan & Bodner, H. Garold Jordan, Leigh R. Bodner*, for appellant.

*Webb & Daniel, Paul Webb, Jr., William C. Gentry, Marcia D. Ernst*, for appellees.