A91A1259. LANDIS v. ROCKDALE COUNTY et al.
(427 SE2d 286)

BEASLEY, Judge.

The question is whether a law enforcement officer owes a tort duty to a member of the general public injured by a drunk driver, when the officer allows the noticeably intoxicated driver to continue operating the motor vehicle.

Plaintiff Landis, individually and as administratrix of the estate of her late husband, appeals the grant of summary judgment and entry of final judgment pursuant to OCGA § 9-11-54 (b) in favor of defendants Rockdale County, Davis, individually and as former Sheriff

of Rockdale County, and Deputy Sheriff Drummond. Also named as defendants were driver Taggart, her parents, and the storeowner who allegedly sold Taggart alcoholic beverages.

The claims against Davis and the county are for the negligent hiring and retention of Drummond and for the imputed negligence of Drummond, i.e., his "careless" acts in performing his official duties as officer and employee, attributable to them under the doctrine of respondeat superior. The claim against Drummond is for breach of his duty. It was contended that governmental immunity has been waived by the county's purchase of a one million dollar liability insurance policy, up to the limit of that policy. Plaintiff does not seek more from these defendants.

Landis alleges that at approximately 11:20 p.m. on November 11, 1988 defendant Taggart, then a minor, was under the influence of alcohol and carelessly drove her vehicle off the roadway to the right, returned to the roadway, and crossed the centerline into the path of Gregory Campbell Landis' vehicle, causing a violent collision which resulted in Mr. Landis' death. She also alleges that less than two hours earlier, on-duty officer Drummond observed Taggart in a noticeably intoxicated condition, driving a motor vehicle.

The plaintiff's evidence showed the following. On the evening of the incident, Taggart, age 17, consumed a half-pint of grain alcohol and a can of beer. She then drove with three friends to a high school football game, where she was visibly intoxicated. She was stumbling and fell to the ground and remained there several minutes, crying. Her friends tried to stop her from driving but were unsuccessful. One friend would not go in the car with Taggart driving. After about 20 minutes, Taggart went to a fast food restaurant where she ate a very small amount and appeared to be drowsy and slumped over. After a little while, she and one girl friend left the restaurant and proceeded toward a party at an acquaintance's house, with two other friends following in another car. Shortly after leaving the restaurant, they stopped at the scene of an unrelated automobile collision.

Deputy Sheriff Drummond was directing traffic at the accident scene. Taggart's friends stated that she got out of her car and flirted with Drummond, holding onto him for support, laughing, and rubbing his arm. One friend testified Drummond asked what she had been drinking, she said "nothing," and Drummond asked if her father ran a local country club. She said "yes" and the deputy said "okay." Another of Taggart's friends said Taggart told her she (Taggart) was not arrested because her father let Drummond play golf for free at the club. Taggart herself had no recollection of the events or conversation at that scene.

The facts of the encounter with Drummond are in dispute. His testimony is that he conversed with Taggart through the open car

window, detected no alcohol on her breath, and did not believe her to be intoxicated. He said he did not notice any erratic driving as she drove off. It is undisputed that Drummond neither gave Taggart a field sobriety test nor attempted to prevent her from driving her car.

Taggart and her friends proceeded to the party. No one there, herself included, could testify whether or not she had more alcohol. Her friends tried without success to keep her keys from her. She left the party alone, got lost, called her place of employment to find her way, and was involved in the fatal collision at 11:20 p.m. Her blood alcohol level at 12:49 a.m., November 12, was 0.21 percent.

Rockdale County, Sheriff Davis, and Drummond moved for summary judgment on primarily two theories: 1) Drummond's duty, if any, to arrest Taggart's driving (by arresting her and/or requiring her friend to drive instead) was owed to the public at large and did not extend to an individual member of that general public so that his breach of that duty, if any, does not under Georgia law give rise to a cause of action for injuries suffered by that third party; 2) Drummond's negligence, if any, was not the proximate cause of the collision, due to the intervening negligence and criminal acts of Taggart, i.e., driving while intoxicated and possible alcohol consumption after the encounter with Drummond. They also maintained that the claims of negligent hiring and retention should be dismissed as dependent on the primary claims.

The trial court did not explain the basis for its grant of summary judgment.

Appellant Landis contends that summary judgment was unauthorized because (1) the county waived sovereign or official immunity by its purchase of the insurance; (2) Drummond, as a sworn law enforcement officer, had a duty to third party highway users to prevent an obviously intoxicated motor vehicle driver from continuing to drive; (3) whether or not the officer's breach of duty proximately caused the fatality is a jury issue.

1. Sovereign immunity. Art. I, Sec. II, Par. IX of the 1983 Georgia Constitution, as amended in 1991, is not to be applied retroactively. *Donaldson v. Dept. of Transp.*, 262 Ga. 49 (414 SE2d 638) (1992).[1] Therefore, the county's insurance acts as a waiver of sovereign immunity to the extent of the policy. *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990). Thus, there is no issue of a distinction between ministerial and discretionary acts and mere negligence is ac-

---

[1] This appeal was transferred to the Supreme Court on October 1, 1991, because of the constitutional question of the applicability of amended Art. I, Sec. II, Par. IX of the 1983 Georgia Constitution. The Supreme Court returned the case to this Court after concluding that the constitutional question of the applicability of the amendment was waived. It noted nevertheless that the amendment would not be applied retroactively, citing *Donaldson*.

tionable. Id.; *Early County v. Fincher*, 184 Ga. App. 47 (360 SE2d 602) (1987); cf. *Vertner v. Gerber*, 198 Ga. App. 645 (402 SE2d 315) (1991).

2. Officer's duty. This being summary judgment, as to the facts we assume the evidence and reasonable inferences in favor of appellant, the non-moving party. OCGA § 9-11-56; *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962); see also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

To state a cause of negligence, the first essential element is a legal duty, that is, a duty " 'to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm. . . .' " *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Appellant contends that the duty emanates from OCGA §§ 51-1-1 and 51-1-6, but they merely define a tort and authorize damages when a legal duty is breached. Neither creates a legal duty substantively. She also refers to the "general duty one owes to all the world not to subject them to unreasonable harm." See Restatement, Torts 2d, § 282. It is true, as she points out, that drunk driving is a criminal violation of the law, OCGA § 40-6-391. A law enforcement officer is *authorized* to arrest for such without a warrant "if the offense is committed in his presence or within his immediate knowledge," OCGA § 17-4-20 (a), but this empowerment does not generally impose a *duty* to do so within the contemplation of tort law. However, it has been stated in dictum " 'that where a crime is committed in the presence of an officer, it is not only his right then and there to arrest without a warrant, but it is his duty to do so. *Earl v. State*, 124 Ga. 28 (52 S.E. 78).' " *Yancey v. Fidelity & Cas. Co. of N. Y.*, 96 Ga. App. 476, 478 (1) (100 SE2d 653) (1957). The 1983 Constitution of Georgia provides the foundation for such a duty in its second paragraph: "Protection to person and property is the paramount duty of government and shall be impartial and complete." Art. I, Sec. I, Par. II.

There is expert testimony in this case that, given the circumstances as evidenced by plaintiff, the standard of care required Officer Drummond to prevent Taggart from driving. In fact, Sheriff Davis testified that "If the officer has probable cause to believe that the person who is driving is impaired, he does have an obligation to get him off the road." Officer Drummond himself testified that it is an officer's duty and responsibility to remove a driver he determines is under the influence of alcohol from the roadway "and get them to a safe place." This, he said, was the sheriff's department policy and what he followed; arrest is regarded as discretionary, policy-wise.[2]

---

[2] Appellant does not contend that she can recover for decedent's death due to any

The general duty referred to above, as articulated in the Restatement, Sec. 282, was the beginning basis for the legal duty in *Bradley Center,* supra. That case is like this one in that it involves a defendant being sued for the act of a third person which results in harm to plaintiff.

In such third party cases, "there is no duty to control the conduct of third persons to prevent them from causing physical harm to others," citing *Shockley v. Zayre,* 118 Ga. App. 672 (165 SE2d 179) (1968), and Restatement, Torts 2d, § 315. That section provides two exceptions, which are where "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection."

*Bradley Center* involved a type (a) exception, created by the special relationship existing between defendant and the third person. The particular instance of this exception is articulated in Restatement, Torts 2d, § 319: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." This exception, recognized by the Georgia Supreme Court as "a given standard of conduct" applying in *Bradley Center,* supra at 203, and which was implied in the nursing home context in *Assoc. Health Systems v. Jones,* 185 Ga. App. 798 (1) (366 SE2d 147) (1988), does not apply here, because the officer exercised no degree of control over Taggart.

This court has recently focused on the general duty/special relationship dichotomy in considering police liability to third persons, in *Jordan v. City of Rome,* 203 Ga. App. 662 (417 SE2d 730) (1992); cert. granted, 203 Ga. App. 909. The facts of that case show a direct contact between the injured party and the police and their knowledge of impending danger to that person from the third person, as well as evidence of the subsequently injured party's reliance on stated police assurances of intervention. See Section 315 (b). Such a relationship does not exist here.

*Sutter v. Hutchings,* 254 Ga. 194 (327 SE2d 716) (1985), is also

---

breach of duty owed by the officer to the drunk driver. Injury to the allegedly drunk driver was the basis for that party's own suit against the police and city, on the theory that the officer had breached a mandatory duty to arrest, in *Ferguson v. City of Doraville,* 186 Ga. App. 430 (367 SE2d 551) (1988), overruled in part on other grounds, *Vogtle v. Coleman,* 259 Ga. 115, 119 (3) (376 SE2d 861) (1989). However, the evidence did not establish that the plaintiff was driving, and he was never under police custody. Nor has appellant alleged wilful and wanton conduct, but only negligence. See *Truelove v. Wilson,* 159 Ga. App. 906, 908 (4) (285 SE2d 556) (1981). See also OCGA § 35-1-7, regarding liability of officer performing duties at emergency scenes.

cited by appellant as a case in which defendant was liable to plaintiff for a third party's act. The duty found there was imposed in two specific Code sections, OCGA §§ 3-3-22 and 3-3-23 (a). It was these two requirements which supplied the duty contemplated in OCGA § 51-1-6, which the Court held extended to third parties as well as to those noticeably intoxicated. The alcohol provider statutes do not apply here.

However, the same rationale does apply: the duty of alcohol providers extends to third parties because of the "risks involved and the General Assembly's efforts to control drunk driving for the protection not only of those drivers but others on the highways. . . ." Id. at 197. The law enforcement officer who has authority and opportunity to prevent a noticeably intoxicated driver from continuing to drive is faced with the same risks and efforts, which are undeniably more keenly known to him or her because of experience and training.

There is an identifiable standard of care in this case, based on the statutory prohibition against alcohol-influenced driving coupled with the power and duty of the police to prevent the driving of people whom they find to be in that condition. The duty ran to the general public, one member of which was subsequently injured and died.

3. The issue of proximate cause presents a jury question in this case, because whether Officer Drummond's failure to act constituted a proximate cause of Landis' subsequent death, is not plainly and indisputably precluded as a matter of law. That is the test. *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25) (1976); *Hercules, Inc. v. Lewis*, 168 Ga. App. 688 (309 SE2d 865) (1983). Nor can we say as a matter of law that it is too remote, OCGA §§ 51-12-8; 51-12-9, or that Taggart's criminal act of driving while intoxicated so as to cause a collision was unforeseeable. As quoted in *Bradley Center*, "The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act." *Atlantic C. L. R. Co. v. Godard*, 211 Ga. 373, 377 (86 SE2d 311) (1955).

Thus the court erred in granting summary judgment to the three defendants on the claim of affirming Drummond's negligence.

4. Appellant has failed to develop on appeal the claims of negligent hiring and negligent retention. She fails to enumerate this aspect of the grant of summary judgment as error and to show how it constitutes legal error. Moreover, the evidence shows the absence of either one, and summary judgment was proper.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Birdsong, P. J., Cooper and Johnson, JJ., concur. Carley, P. J., concurs in Divisions 1, 2, 3 and in the judgment. Sognier, C. J., Pope and Andrews, JJ., dissent.*

Pope, Judge, dissenting.

While I concur fully with Judge Andrews' dissent, I write separately to point out the fallacy of the majority's strained creation of a new tort duty in this case. In a desperate search to find a legal basis for this new duty, the majority gleans this duty from the rationale underlying the alcohol provider statutes, statutes the majority concedes do not even apply to this case. The result — this is a classic case of bad facts making bad law. While I sympathize with the plaintiff's tragic loss of her husband, we should not allow the circumstances of this case to cause us to deviate from traditional tort principles and analysis when deciding whether Drummond owed a duty to plaintiff's decedent to remove Taggart from the highway.

Contrary to the majority's contention otherwise, the rationale underlying our Supreme Court's decision in *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985) and OCGA §§ 3-3-22 and 3-3-23 do not provide a basis for the expanded common law duty created by the majority in this case. The rationale underlying *Sutter* and those statutes is that one who provides alcoholic beverages to a person who is noticeably intoxicated and who will soon be driving and/or to one who is younger than the legal drinking age by their own actions increases the risk to others using the highways that they will be harmed by the intoxicated persons. A police officer, on the other hand, by merely coming into contact with someone who is intoxicated, has done nothing to expose the travelling public to any greater danger.

The proper starting point when deciding if the police officer in this case owes a duty to plaintiff's decedent is the general rule, as stated in the Restatement (Second) of Torts, § 315 and as approved by our Supreme Court in *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982), that there is no duty to prevent a third person from harming another, absent a special relation between the actor and wrongdoer or between the actor and the victim. Construing the facts in the light most favorable to plaintiff, in this case there is no evidence of the type of "special relation" that will support a finding of duty. The plaintiff's decedent had no contact with Drummond or any other Rockdale County police officer on the night of the collision and neither the plaintiff's decedent or the police acted in a manner that would create a special relationship between the plaintiff's decedent and the police. Furthermore, there is no evidence of a special relation between Taggart and Drummond. Through a purely chance encounter, which occurred when Taggart stopped at an accident scene at which Drummond was directing traffic, Drummond engaged in casual conversation with Taggart, had an opportunity to observe her and allegedly either knew or should have known that she was intoxicated. Taggart was not stopped by Drummond nor was she ever detained or in any way placed under his control on the night of the fatal collision.

Thus, there is simply no showing of a special relation between Drummond and Taggart or Drummond and plaintiff's decedent.

In cases such as this before finding the required special relation needed to create a duty, at a minimum, we should require a showing of some control being exercised by the police officer over the wrongdoer or a showing that a police officer knew of imminent harm to an identifiable victim by a known wrongdoer. See *Shore v. Town of Stonington*, 444 A2d 1379 (Conn. 1982); accord *Jordan v. City of Rome*, 203 Ga. App. 662 (417 SE2d 730) (1992), cert. granted, 203 Ga. App. 909. Duty, in such cases, should not hinge on a mere chance encounter between a police officer and a person who subsequently causes injury to another.

Under similar circumstances a New York appellate court refused to hold that there was a duty of care owed to plaintiff's decedent when the drunk driver who killed plaintiff's decedent had a conversation with a police officer earlier in the day and the officer believed the driver was intoxicated but did not prohibit him from driving. *Crosby v. Bethlehem*, 457 NYS2d 618 (1982). Indeed the substantial majority of jurisdictions that have considered this issue have refused to allow actions based on police negligence, expressing the fear that holding law enforcement officers liable for failure to make an arrest would cripple an essential governmental function by forcing police officers to choose between potential liability for making a false arrest on one hand and for failure to make an arrest on the other hand. See generally, Annotation, *Failure to Restrain Drunk Driver as Ground of Liability of State or Local Government Unit or Officer*, 48 ALR4th 320 (1986).

As a majority of this court noted in *Ferguson v. City of Doraville*, 186 Ga. App. 430, 432 (367 SE2d 551) (1988), overruled in part on other grounds, *Vogtle v. Coleman*, 259 Ga. 115 (376 SE2d 861) (1989) (quoting *Pierson v. Ray*, 386 U. S. 547, 555 (87 SC 1213, 18 LE2d 288) (1967), overruled on other grounds *Harlow v. Fitzgerald*, 457 U. S. 800 (102 SC 2727, 73 LE2d 396) (1982)). " '[A] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does.' " A police officer's lot is now that unhappy in Georgia. When considering this undesirable result of the majority opinion coupled with the inescapable fact that there is no valid basis for the majority's expansion of a police officer's duty in this case to plaintiff, I must conclude that the order of the trial court granting summary judgment in favor of the defendants was correct and should be affirmed.

I am authorized to state that Judge Andrews joins in this dissent.

ANDREWS, Judge, dissenting.

I respectfully dissent. I agree with the majority's initial application of traditional tort analysis with respect to whether the police officer had a duty to third parties to control Taggart's conduct, but I cannot agree with the majority's departure from this analysis to create what appears to be an expanded common law duty applicable to police officers.

The general duty of the police to protect the public is not a sufficient basis to support a tort action against the government or the officer for an alleged failure of an officer to prevent a potential tortfeasor from harming a third person. See *Jordan v. City of Rome*, 203 Ga. App. 662, 670-673 (417 SE2d 730) (1992) (Andrews, J., dissenting), cert. granted, 203 Ga. App. 909. Rather, in the absence of sovereign immunity, a traditional tort analysis applies to the threshold duty issue. As the majority recognizes, the general rule in such third party cases as stated in *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982), is that "there is no duty to control the conduct of third persons to prevent them from causing physical harm to others." *Bradley Center* dealt with specific exceptions to the general rule under Restatement, Torts 2d, §§ 315 and 319. Section 315 sets forth two exceptions to the no duty rule where "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." Section 319 is a more specific statement of the type (a) exception of section 315, and provides that: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." As in *Bradley Center*, this case deals with a type (a) exception.

I agree with the majority that the specific § 319 exception to the no duty rule applied in *Bradley Center* does not apply here because the police officer exercised no control over Taggart. I also agree with the conclusion that, although a police officer has authority to arrest a person without a warrant where an offense is committed in his presence or within his immediate knowledge (OCGA § 17-4-20), this *authority* alone does not create a *duty* to arrest for purposes of a tort action. The lack of such an affirmative duty to arrest sufficient to support a tort action is implicit in the holding of *Ferguson v. City of Doraville*, 186 Ga. App. 430, 431-432 (367 SE2d 551) (1988), overruled in part on other grounds, *Vogtle v. Coleman*, 259 Ga. 115, 119, n. 8 (376 SE2d 861) (1989). In that case a police officer found the plaintiff alone and intoxicated in his parked automobile. The officer instructed the plaintiff he could remain in the car to sleep, but not to move the

vehicle. After the officer left, the plaintiff exited the car, and while attempting to cross the street in his intoxicated condition, was struck and severely injured by a passing motorist. He sued claiming the officer breached a mandatory duty to arrest him as a drunk driver. The court addressed this issue finding it was unclear whether the officer had probable cause to arrest under the circumstances, but nevertheless concluding that, "[i]t being apparent without dispute from the uncontroverted evidence of record in this case that [the officer] did nothing to restrict [the plaintiff's] liberty, expose him to greater danger, or otherwise adversely affect his position, we must agree with the trial court that the officer acquired no legal duty to protect him either from the consequences of his own behavior or from the negligence of others." See also *McGuirt v. Lawrence*, 193 Ga. App. 611, 612 (389 SE2d 2) (1989) (physical precedent).

Accordingly, I find no breach of any affirmative tort duty to arrest Taggart, nor do I find a duty under exception (a) of Restatement, Torts 2d, § 315. In my view, the police officer's encounter with Taggart does not give rise to the type of "special relation" contemplated in exception (a) of § 315. The exception under § 315 (a) has been applied in *Bradley Center* and other cases where there is evidence of some type of established, continuous relationship with the third party in which control is exercised. See *Keppler v. Brunson*, 205 Ga. App. 32 (421 SE2d 306) (1992); *Ermutlu v. McCorkle*, 203 Ga. App. 335, 336-337 (416 SE2d 792) (1992); *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801-802 (366 SE2d 147) (1988). The passing encounter of a police officer with a third person in which the officer may or may not determine that probable cause exists to exercise his authority to make an arrest, is not such a "special relation" for purposes of creating a tort duty to prevent a third person from harming others. Moreover, to impose a "special relation" under these circumstances puts police officers in the precarious position of choosing between potential claims for false arrest, or potential tort liability to injured third parties for failure to arrest. In effect, the majority's holding will discourage the reasonable exercise of discretion by police officers, and encourage arrests in marginal cases supported by only slight evidence of criminal conduct.

After starting down the path of traditional tort analysis, the majority has diverged from it to judicially expand the common law, and create a new tort duty applicable to police officers. Although conceding that the alcohol provider statutes (OCGA §§ 3-3-22; 3-3-23 (a)) do not apply to the present case, the majority concludes they provide the following rationale for imposing a tort duty on the officer to protect third parties by arresting Taggart: The duty imposed under these statutes, which prohibit providing alcohol to those noticeably intoxicated and underaged, is based on the Legislature's desire to protect

both drunk drivers and others on the highway. *Sutter v. Hutchings*, 254 Ga. 194, 197 (327 SE2d 716) (1985). Thus, the duty runs not only to those noticeably intoxicated and underaged persons to whom alcohol is provided, but also to third parties injured by these drinkers. Id. By analogy, the majority concludes that a similar duty running to injured third parties should be created and applied to police officers who fail to arrest suspected drunk drivers. I decline to join in this expansion of a police officer's duty and potential tort liability. See *Manuel v. Koonce*, 206 Ga. App. 582 (425 SE2d 921) (1992) (declining to judicially expand the common law by analogy from OCGA § 51-1-40).

Because the defendants violated no duty for which they could be held liable in tort, the order of the trial court granting summary judgment in their favor should be affirmed.

I am authorized to state that Judge Pope joins in this dissent.

DECIDED DECEMBER 4, 1992 —
RECONSIDERATION DENIED DECEMBER 18, 1992 

*Thomas W. Malone, Peterson, Dillard, Young, Self & Asselin, James M. LaChance,* for appellant.

*Chambers, Mabry, McClelland & Brooks, Eugene P. Chambers, Jr., John E. Hawkins, V. Jane Reed, Beth L. Singletary, Jenkins & Eells, Frank E. Jenkins III, Maddox, Starnes & Nix, John A. Nix, Lavigno, Dawkins & Serio, Harrill L. Dawkins,* for appellees.

Abdul S. Valiani, *pro se.*