A93A2013, A93A2014. CITY OF BUFORD et al. v. WARD;
and vice versa.
(443 SE2d 279)

POPE, Chief Judge.

When plaintiff was refused a certificate of occupancy for his new garden center, he sued the City of Buford ("the City"), the City Manager ("Peevy"), the Assistant City Manager ("Garrett"), and three members of the City Board of Commissioners. In Case No. A93A2013, the City, Peevy and Garrett appeal from a judgment entered on a jury verdict against them. In Case No. A93A2014, plaintiff appeals directed verdicts entered for the three commissioners and challenges an evidentiary ruling of the trial court.

*Case No. A93A2013*

We view the evidence presented at trial in a light favorable to the jury verdict. In late 1988, plaintiff decided to open a garden center business on a particular piece of vacant property. This property was located in the City of Buford, on Highway 324 near its intersection with Highway 20. He contacted the City to find out what he needed to do and was referred to defendant Assistant City Manager Garrett, who administered the City's zoning, planning and licensing/permitting departments as part of his day-to-day duties. Garrett told plaintiff he would need to have a survey and site plan done by an engineer, and plaintiff had this done in May 1989. Several revisions to this site plan were made in response to comments from the City's engineering consultants, and building began in June 1989. In order to get a build-

ing permit, plaintiff had to sign a document stating that he understood that he would have to have a plan approved by the State Department of Transportation (DOT) and would have to build a deceleration/acceleration lane along Highway 324 before a certificate of occupancy would be issued. Despite this "letter of understanding," however, the parties continued to dispute just how long the deceleration/acceleration lane needed to be. Plaintiff obtained DOT approval for his plan and eventually built a deceleration/acceleration lane longer than the DOT required, but the City continued to insist that he extend the lane all the way to the intersection of Highways 324 and 20. Between June 1989 and February 1990, the building progressed and the City inspector visited the site numerous times without noting any problems. In February 1990, however, the City informed plaintiff that he would not be issued a certificate of occupancy due to: the inadequacy of the deceleration/acceleration lane; differences between the building as built and as projected on the approved plans, including the placement of parking spaces; the fact that the building was three inches short of the City's side set-back requirement; and the fact that the siltation pond was not functioning properly. Although all these reasons were given, City Manager Peevy testified that the deceleration/acceleration lane dispute was the major problem, and that the others probably could have been worked out. Plaintiff and his lawyer met with Peevy, Garrett and the City's attorney and demanded that the City issue the certificate of occupancy. At that meeting, the City attorney's response to plaintiff's demand was: "We ain't got to do a damn thing. If you don't like it, that's what the courts are for."

Plaintiff did go to court seeking equitable relief and after a hearing on March 22, 1990, obtained a certificate of occupancy. Plaintiff opened his garden center shortly thereafter, but he went out of business the following November and went bankrupt in December 1990. After receiving his discharge in bankruptcy in March 1992, plaintiff pursued this action for damages, alleging that Peevy, Garrett and the commissioners had damaged him by acting oppressively and without authority of law (OCGA § 36-33-4); that the City was liable for damage caused by the improper or unskillful performance of a ministerial duty (OCGA § 36-33-1 (b)); and that the City, Peevy, Garrett and the three City commissioners had violated his civil rights (42 USC § 1983). The trial court directed a verdict for the commissioners on all of plaintiff's claims against them, but the jury awarded plaintiff $30,000 on the OCGA § 36-33-4 claim against Peevy and Garrett individually, $100,000 on the OCGA § 36-33-1 (b) claim against the City, and $100,000 on the civil rights claim against the City, Peevy and Garrett. The jury also awarded punitive damages of $1,000 against Peevy and $10,000 against Garrett on the civil rights claim,

and attorney fees and costs in the amount of $50,000 on the OCGA § 36-33-1 (b) claim, for a total of $291,000.

1. Defendants Peevy and Garrett argue that plaintiff failed to prove a cause of action against them under OCGA § 36-33-4. This Code section provides in pertinent part that officers of a municipal corporation "shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."

Peevy and Garrett implemented a City policy under which the issuance of a business's building permit or certificate of occupancy could be conditioned upon the completion of a deceleration/acceleration lane on an adjacent public roadway whenever and to whatever extent Peevy and Garrett (albeit with the advice of the City's engineers) deemed such a lane necessary to facilitate traffic flow. At best, the authority for this policy was a zoning law which purported to incorporate unspecified DOT regulations which discussed generally the use of deceleration/acceleration lanes to facilitate traffic flow. Although it is understandable that the need for such lanes will vary with the circumstances, we note that there is nowhere even a listing of guidelines or factors to be considered in determining whether and to what extent these lanes are needed. Cities may place conditions on the operation of a business enterprise in the exercise of their police powers, but to be valid such conditions must be based on an ordinance "written with sufficient specificity to apprise all parties concerning the . . . required conditions" and the conditions "would have to apply uniformly to all persons and firms concerned." *City of Hawkinsville v. Wilson & Wilson, Inc.*, 231 Ga. 110, 111 (2) (200 SE2d 262) (1973). Because the policy implemented by Peevy and Garrett gave them unfettered discretion and was not based on an ordinance setting forth guidelines or factors for consideration with sufficient specificity to apprise citizens of what to expect, actions taken pursuant to this policy were taken without authority of law. We further note that plaintiff presented evidence of numerous other business enterprises in the City (including one partially owned by defendant Garrett) which had not been required to build deceleration/acceleration lanes, or had been required to build much less extensive ones. Although the City was able to articulate reasons for these differences, there was no way for the public to know these reasons, and these differences in application of the policy demonstrate the problem of unfettered discretion on the part of officials without the benefit of specific written guidelines.

Peevy and Garrett argue that even if their actions were without legal authority, they are not liable under OCGA § 36-33-4 because plaintiff did not sustain special damages. However, plaintiff testified at trial that because of Peevy and Garrett's unauthorized demands,

he expended $2,800 to extend his deceleration/acceleration lane beyond the length required for DOT approval. Contrary to defendants' assertion, this was sufficient to show special damages, whether this means individual damages in which the public has not participated, see OCGA § 51-1-7, or actual damages which must be specifically proved, see *Kennedy v. Johnson*, 205 Ga. App. 220 (1) (421 SE2d 746) (1992).[1] Nor can we agree with defendants that the statute limits the municipal officers' liability to actual damages. Furthermore, defendants' reliance on *Hawkinsville*, supra, to support their assertion that plaintiff cannot recover under this statute because he did not show they acted with malice in the performance of a non-discretionary, ministerial duty is misplaced. See *Hawkinsville*, 231 Ga. at 111-112 (3). The Supreme Court in *Hawkinsville* discussed malice because malice was alleged, but the statute clearly supports recovery where actions are taken "oppressively, maliciously, corruptly, *or* without authority of law." (Emphasis supplied.) OCGA § 36-33-4. Moreover, the non-discretionary, ministerial nature of the duty was important in *Hawkinsville* because the defendants would otherwise have been able to rely on sovereign immunity. In this case, on the other hand, it is undisputed that sovereign immunity has been waived by the purchase of insurance. Accordingly, plaintiff established the necessary elements of a cause of action under OCGA § 36-33-4, and the trial court did not err in denying Peevy and Garrett's motion for j.n.o.v. on this count.

2. Citing *Wheeler v. City of Pleasant Grove*, 833 F2d 267 (11th Cir. 1987), defendants contend the trial court should have charged the jury that the proper measure of damages under OCGA § 36-33-4 was "the return on the portion of fair market value that is lost as a result of the regulatory restriction." However, *Wheeler* is a regulatory takings case while a claim under OCGA § 36-33-4 is essentially a tort action in which general as well as compensatory damages may be recovered. Thus, the trial court did not err in rejecting defendants' requested charge.

3. However, the City's argument that plaintiff has no cause of action against it under OCGA § 36-33-1 (b) and/or § 51-1-6 has merit. The latter Code section does not create a cause of action, of course; it simply authorizes the recovery of damages for a breach of a legal duty. And contrary to plaintiff's contention, OCGA § 36-33-1 (b) does not create a duty on the part of cities to perform all acts properly and skillfully. Instead, this provision that cities shall be liable for "improper or unskillful performance of their ministerial du-

---

[1] In *Kennedy* the plaintiff did not argue that "special damages" as used in OCGA § 36-33-4 means individual rather than actual damages. The plaintiff in this case does make that argument, and we think it has merit.

ties" simply creates an exception from sovereign immunity for cities' negligence in proprietary or non-governmental matters. See *Sinkfield v. Pike*, 201 Ga. App. 652 (3) (411 SE2d 889) (1991). As defendants' waiver of sovereign immunity was undisputed in this case, OCGA § 36-33-1 (b) was inapplicable. Thus, the trial court erred in instructing the jury on this Code section and the City's motions for directed verdict and j.n.o.v. should have been granted as to this cause of action.

4. Defendants also argue that their motion for j.n.o.v. as to plaintiff's claims under 42 USC § 1983 should have been granted because the evidence was insufficient to establish a violation of plaintiff's constitutional rights as a matter of law. We agree.

(a) To establish that his substantive due process rights were violated, plaintiff had to show that the denial of his certificate of occupancy as the result of his failure to extend the deceleration/acceleration lane deprived him of a protected property interest, and that defendants' actions in doing so were without rational basis. *D. C. A. Dev. Corp. v. Ogden City Municipal Corp.*, 965 F2d 827, 829 (10th Cir. 1992); *Spence v. Zimmerman*, 873 F2d 256, 258-261 (11th Cir. 1989). An applicant has a property interest in a certificate of occupancy only if the local government must issue a certificate if certain requirements are met and all those requirements are in fact met. *Spence*, 873 F2d at 258. In this case, the evidence shows that when the certificate was denied, the finished building differed from the building as projected on the approved plans, the building failed to comply with the City's set-back requirements, and the required siltation pond was not functioning properly. Thus, despite evidence that the denial of the certificate was primarily based on plaintiff's failure to meet the unlawfully imposed lane requirement, plaintiff's failure to comply with these other legal requirements means that he did not have a protected property interest in the certificate of occupancy. Furthermore, despite the unlawful nature of the extended deceleration/acceleration lane requirement, it did have a rational basis — the promotion of the City's legitimate interest in facilitating traffic flow. And contrary to plaintiff's assertion, defense counsel's statement of defendants' position and suggestion that plaintiff go to court if he disagreed did not render defendants' otherwise rational acts arbitrary and capricious. See also *Spence*, 873 F2d at 262 (disputes involving land use regulation by local governments will rarely if ever implicate constitutional rights).

(b) Plaintiff also alleged that defendants violated his equal protection rights by requiring him to build a deceleration/acceleration lane longer than those required of other similarly situated landowners. "Because the challenged conduct does not implicate a suspect classification or fundamental right, plaintiffs must also show that [de-

fendants'] actions were not rationally related to a legitimate state interest." *D. C. A. Dev.*, 965 F2d at 829. As noted above in Division 1, plaintiff presented evidence of other businesses which were not required to build deceleration/acceleration lanes of such length. However, none of these businesses were similarly situated in terms of their proximity to the intersection of two major State roads. Thus, any disparity in treatment was rationally related to the legitimate interest in facilitating traffic flow, and the trial court erred in submitting this claim to the jury as well.

### Case No. A93A2014

5. In his cross-appeal, plaintiff argues that the trial court erred in directing verdicts for the three individual commissioners. Plaintiff informed the commissioners of his dispute with the City Manager and Assistant City Manager and the commissioners did not intervene on plaintiff's behalf. However, the commissioners were not directly involved in any of the decisions made with respect to plaintiff's certificate of occupancy; nor was it their job to be directly involved in such decisions. A citizen cannot make a member of what is essentially the legislative branch of city government responsible for the alleged torts of a member of the executive branch by writing the former a letter complaining about the actions of the latter. Accordingly, the trial court did not err in directing verdicts for the three commissioners.

6. Because we have upheld plaintiff's claim that defendants' requirement of an extended deceleration/acceleration lane was without lawful authority, we need not address plaintiff's contention that the City's zoning ordinance and related regulations, on which defendants' authority was purportedly based, should not have been admitted.

*Judgment in Case No. A93A2013 affirmed in part and reversed in part. Judgment in Case No. A93A2014 affirmed. McMurray, P. J., Birdsong, P. J., Beasley P. J., Cooper, Johnson, Blackburn and Smith, JJ., concur. Andrews, J., concurs in part and dissents in part.*

ANDREWS, Judge, concurring in part and dissenting in part.

I respectfully concur in Divisions 2 through 5. Nonetheless, I dissent from Division 1, in which the majority concludes that plaintiff proved a cause of action against Peevy and Garrett under OCGA § 36-33-4. Peevy and Garrett implemented a broadly-drafted City policy which allowed them to exercise discretion. The opinion states that "these differences in application of the policy demonstrate the problem of unfettered discretion on the part of officials without the benefit of specific written guidelines." (Majority op., p. 754.)

Although the discretion allowed under the policy may be less than ideal, the fact that the policy allows for discretionary implemen-

tation should not subject Peevy and Garrett to individual liability. OCGA § 36-33-4 provides that "officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done . . . without authority of law." Here, the officers acted *with* the authority of law — the law was simply overly broad.

The instant matter is distinguishable from *City of Hawkinsville v. Wilson & Wilson, Inc.*, 231 Ga. 110, 111 (2) (200 SE2d 262) (1973), since the tax ordinance at issue in that case allowed for *no* discretion. In fact, in *Hawkinsville*, the court stated that a plaintiff must prove that the officials "acted contrary to a non-discretionary, ministerial duty." The ordinance in that case fixed the license tax only and the City officials had no authority to impose any conditions other than the payment of a tax. Although the *Hawkinsville* court stated, in dicta, that a valid licensing ordinance required specificity and uniformity, the allowance of discretion in an ordinance does not necessarily conflict with these requirements.

Because of my conclusion with regard to Division 1, unlike the majority opinion, I must address the substantive merits of Division 6. That division focuses on Ward's claim in the cross-appeal that the trial court erred in admitting into evidence the City zoning and subdivision ordinance. The resolution of this issue is important, since evidence of the ordinance was necessary in order to determine that Peevy and Garrett acted within the scope of their legal authority.

The court took judicial notice of the Buford City Charter, which provided that all acts and doings of the City Commission shall be recorded on the minutes. Citing *Toomey v. Norwood Realty Co.*, 211 Ga. 814, 816-817 (1) (89 SE2d 265) (1955), Ward argues that the zoning and subdivision ordinance was not recorded on the minutes as required by the charter and therefore it had no force.

This argument lacks merit. The minutes of a July 16, 1985 commission meeting during which the relevant ordinance was adopted were introduced into evidence. Those minutes showed that an ordinance was adopted on that date. Although the minutes do not specifically cite the ordinance, the ordinance itself, which was certified by a City clerk, showed that it was enacted by the City Commission on July 16, 1985. An extra certification attached to the ordinance verified that the Buford Zoning Ordinance and Subdivision was adopted by the Buford City Commission after a public hearing on the 16th day of July 1985. Thus, although the minutes from that meeting itself were somewhat unclear as to which ordinance was adopted, the ordinance itself provided the necessary information and the requirements of the charter were met.

Ward argues that the minutes of the Commission do not sufficiently incorporate by reference the ordinance. "The tests to be ful-

filled to effectively accomplish adoption of documents . . . by incorporation by reference . . . are these: (1) The document must be sufficiently identified so that there is no uncertainty as to what was adopted. (2) The document must be made a public record. (3) It must be accessible to members of the public who are, or may be affected by it. (4) The adopting resolution must give notice of this accessibility." (Citations and punctuation omitted.) *Reynolds v. Bd. of Commrs. of Paulding County*, 180 Ga. App. 516 (349 SE2d 536) (1986). Here, the minutes and ordinance together meet these requirements of incorporation by reference and, contrary to Ward's arguments, the ordinance was sufficiently identified and made part of the public record. See *Friedman v. Goodman*, 219 Ga. 152 (3) (b) (132 SE2d 60) (1963); compare *City of Flovilla v. McElheney*, 246 Ga. 552 (272 SE2d 287) (1980); *Foskey v. Kirkland*, 221 Ga. 773, 775 (147 SE2d 310) (1966). Accordingly, the ordinance was properly admitted into evidence and Ward's claim is without merit.

DECIDED MARCH 17, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 — 

Sullivan, Hall, Booth & Smith, Jack G. Slover, Jr., Jeffrey T. Wise, Drew, Eckl & Farnham, T. Bart Gary, Theodore Freeman, Chandler & Britt, Walt M. Britt, for appellants.
G. Gibson Dean II, for appellee.