**Vimal JAIRATH, Plaintiff,**

v.

**Dr. Wallace DYER, M.D., Defendant.**

**No. 1:96–CV–1987 JEC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 24, 1997.

completed their assignments with significantly more dispatch than did Plaintiff.

Milton D. Rowan, Rowan & Neis, Atlanta, GA, for Plaintiff.

Michael A. Pannier, Sullivan, Hall, Booth & Smith, Atlanta, GA, for Defendant.

### AMENDED ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motion for Summary Judgment [13]. The Court has reviewed the record and the arguments of the parties and, for reasons set out below, concludes that defendant's Motion for Summary Judgment should be GRANTED.

### BACKGROUND

In March of 1996, plaintiff Vimal Jairath contacted defendant's office to have a Gore–Tex implant procedure performed. When defendant learned that plaintiff is HIV positive, defendant declined to perform the operation.

Plaintiff subsequently filed a complaint in the Superior Court of Fulton County, State of Georgia, on July 3, 1996. Plaintiff alleges that defendant violated Title III of the Americans With Disabilities Act (hereinafter "ADA") because medical services provided to others were not equally available to him and because these services were denied as a result of his disability. (Compl.(1) at 6 (referring to 42 U.S.C. § 12101).) Defendant states that he did not operate on plaintiff because the requested procedure was too threatening to plaintiff's health.

Though framing his case around a violation of the ADA, plaintiff does not seek relief under that statute.[1] Instead, he seeks damages pursuant to O.C.G.A. § 51–1–6. (Compl. [1] at 4.) This code section authorizes recovery of damages under certain circumstances where a legal duty has been breached.

Defendant filed a Notice and Petition for Removal to this Court on August 7, 1996, based on federal jurisdiction over ADA claims. On September 19, 1996, plaintiff filed a motion to remand this action to the Superior Court of Fulton County, arguing that because he seeks to recover under O.C.G.A. § 51–1–6, his suit is predicated on state, not federal, law. The Court denied plaintiff's motion on December 13, 1996. Defendant now files a Motion for Summary Judgment requesting that the Court find as a matter of law that plaintiff is restricted to recovery under the ADA because O.C.G.A. § 51–1–6 does not apply to this case. Additionally, defendant asks the Court to find that because plaintiff would only be entitled to prospective injunctive relief under the ADA, he does not have standing to prosecute this action. Finally, assuming plaintiff does have standing, defendant contends that summary judgment would still be appropriate as plaintiff has failed to demonstrate a violation of the ADA.

### DISCUSSION

#### I. Summary Judgment Standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. at 2552–53; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at

---

1. Under the ADA, plaintiff would be entitled to injunctive relief only. 42 U.S.C. § 12188. It appears that this relief is not sufficient for plaintiff and he, accordingly, has constructed an argument based on O.C.G.A. § 51–1–6 in an attempt to recover money damages.

2553–54. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence[2] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. Id. at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element material to that party's case so as to create a genuine issue for trial.

## II. Liability Under O.C.G.A. § 51–1–6

Plaintiff alleges that defendant's violation of the ADA is a violation of a legal duty within the meaning of O.C.G.A. § 51–1–6.[3] Plaintiff relies upon *Mangin v. Westco Security Systems, Inc.*, 922 F.Supp. 563 (M.D.Fla.1996), for the proposition that, in most circumstances, the ADA does not preempt state discrimination laws. *See Mangin v. Westco Security Systems, Inc.*, 922 F.Supp. 563, 567 (M.D.Fla.1996) (holding that remedies under Florida Civil Rights Act were not preempted by ADA). *Mangin*, however, is distinguishable from the case at bar most notably because O.C.G.A. § 51–1–6 is simply not a state discrimination statute. Rather, it operates in conjunction with a statute that recognizes a breach of duty but provides no express cause of action regardless of whether discrimination is involved.

Plaintiff further relies on *Mangin* to establish "[C]ongress' intent to allow 'simultaneous recovery' under compatible state and federal statutes." *Id.* Contrary to plaintiff's contention, however, the Court has previously determined that O.C.G.A. § 51–1–6 and the ADA are not compatible statutes. (*See generally* Order [12] at 10.) Accordingly, simultaneous recovery is not authorized. While the Court recognizes that "O.C.G.A. § 51–1–6 is designed to allow recovery where a statutory breach is established, although the applicable statute does not expressly provide a cause of action," the Court also recognizes that the ADA provides an express cause of action. (Order [12] at 10, n. 6.) Indeed, as the Court noted in its prior order, "Congress clearly intended the ADA to provide a private cause of action ... [and] the only way plaintiff seeks to establish a legal duty, a breach of that duty, and injury resulting from that duty is through sole reliance on [the ADA]." (Order [12] at 8.) O.C.G.A. § 51–1–6 by its very terms does not permit recovery of compensatory damages where an ex-

---

2. The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.

3. This statute provides:
   When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for breach of such legal duty if he suffers damage thereby.
   O.C.G.A. § 51–1–6.

press cause of action already exists. The Court, thus, reaffirms its prior determination that the ADA and O.C.G.A. § 51–1–6 are incompatible and that the reasoning of *Mangin* is inapplicable to the present case.

Plaintiff attempts to avoid the import of the express language of O.C.G.A. § 51–1–6 by arguing that Georgia precedent leaves room for his interpretation of the statute. He relies on three cases where O.C.G.A. § 51–1–6 provided a basis for recovering money damages. Plaintiff's argument, however, is derived from an unreasonable interpretation of these cases.

For example, plaintiff contends that in no part of the Georgia Court of Appeals decision, *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 205 Ga.App. 121, 421 S.E.2d 731 (1992), did the court imply that a private cause of action had to be unavailable before § 51–1–6 could be utilized. In that case, the Court of Appeals held that the failure of the defendant, a private hospital, to comply with hospital by-laws when terminating plaintiff's staff privileges was a violation of O.C.G.A. § 51–1–6. *St. Mary's Hosp. of Athens, Inc.*, 205 Ga.App. at 127, 421 S.E.2d 731. The court found that the hospital had a duty to comply with its own by-laws though no private cause of action for a breach of this duty existed. Accordingly, the court found that recovery could be had pursuant to O.C.G.A. § 51–1–6. *Id.* Contrary to plaintiff's assertions, the Georgia Court of Appeals implicitly recognized that only in the absence of an express cause of action could O.C.G.A. § 51–1–6 be invoked. *See generally St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 205 Ga.App. 121, 421 S.E.2d 731 (1992).

Similarly, plaintiff contends that because the Georgia Court of Appeals, in *Landis v. Rockdale County*, 206 Ga.App. 876, 427 S.E.2d 286 (1992), failed to indicate expressly that it allowed recovery under O.C.G.A. § 51–1–6 only because no private cause of action existed, the Court of Appeals endorses the use of that statute even when a private cause of action is available. The plaintiff in *Landis* sued a police officer whose failure to detain or arrest a drunken driver resulted in the death of plaintiff's spouse. *Landis*, 206 Ga.App. at 877, 427 S.E.2d 286. The plaintiff in that case successfully used § 51–1–6 to recover damages based on a statute making it illegal to drive under the influence of alcohol and the duty of police to prevent people who appear intoxicated from driving. *Id.* In contrast to the ADA, this statutory provision did not, itself, provide a private cause of action for a third party. Again, the Court finds the implication of the Landis decision clear—that, before O.C.G.A. § 51–1–6 may be invoked, there must be no existing cause of action. Thus, the Court finds that this case does not provide support for plaintiff's argument.

■ Finally, plaintiff contends that in *City of Buford v. Ward*, 212 Ga.App. 752, 443 S.E.2d 279 (1994), the court implies that § 51–1–6 can operate though another cause of action provides relief for the wrong. (Pl. Resp. to Def. Mot. for Summ. J. [15] at 9.) Plaintiff again misinterprets the case in an attempt to find support for his argument. In that case, the plaintiff was refused a certificate of occupancy for his new garden center. He sued the city, the city manager, and the assistant city manager of Buford contending that they had violated § 36–33–4, § 36–33–1(b), and § 1983. *Ward*, 212 Ga.App. at 752, 443 S.E.2d 279. The court analyzed each of these claims in turn. First, the court indicated that plaintiff had successfully established the elements of a claim under § 36–33–4.[4] Next the court discussed plaintiff's claim that defendant had violated 36–33–1(b).[5] In doing so the court mentioned § 51–1–6 and stated: "The latter Code section [§ 51–1–6] does not create a cause of action, of course; it simply authorizes the recovery of damages for a breach of a legal duty." *Id.* at 755, 443 S.E.2d 279. The Georgia Court of Appeals

---

4. O.C.G.A. § 36–33–4 states:

Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law.

5. O.C.G.A. § 36–33–1(b) provides:

Municipal organizations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable.

neither stated explicitly or implicitly that § 36–33–1(b) contained a private cause of action. Moreover, the court acknowledged that § 51–1–6 does not provide a private cause of action, but only authorizes recovery of damages where a legal duty has been breached. *Id.* at 755, 443 S.E.2d 279. The Court finds that no more or no less can be interpreted from this opinion.

After having reviewed the case law and statutory language of O.C.G.A. § 51–1–6, the Court finds that § 51–1–6 provides recovery for the breach of a duty only when a private cause of action which affords a remedy is not otherwise available. Plaintiff has failed to point to any case in which a court has applied O.C.G.A. § 51–1–6 when a private cause of action already existed. Clearly, the inference to be drawn is that courts only allow a party to use O.C.G.A. § 51–1–6 when no private cause of action exists. Consequently, the Court concludes that plaintiff may not rely on O.C.G.A. § 51–1–6 to recover monetary damages from defendant. Plaintiff is restricted to recovery under the ADA, as that statute provides a private cause of action and a remedy.

**III. Standing Under the ADA**

■ In order for a plaintiff to pursue a cause of action, he must be able to demonstrate to the court that he has standing. In order to establish standing, plaintiffs in federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual "case or controversy." *City of Los Angeles v. Lyons,* 461 U.S. 95, 100, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983); *Jenkins v. McKeithen,* 395 U.S. 411, 421–25, 89 S.Ct. 1843, 1848–50, 23 L.Ed.2d 404 (1969); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). The Supreme Court has held that a plaintiff must demonstrate the existence of three elements to establish a "case or controversy": 1) that he suffered an injury in fact; 2) that his injury was caused by the defendant's conduct; and 3) that his injury is capable of being redressed by a favorable ruling from the federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555,

560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

■ The Court finds that plaintiff has fulfilled the first two requirements for a "case or controversy", but has failed to satisfy the third. Plaintiff satisfies prongs one and two by alleging that defendant discriminated against him by refusing to treat him. Plaintiff cannot show how a favorable ruling from this court would redress his injury, however. As stated earlier, if the Court were to find that plaintiff has a cognizable cause of action under the ADA, the Court would only have discretion to provide injunctive relief. 42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501.[6] *See Hoepfl v. Barlow,* 906 F.Supp. 317, 318 (E.D.Va.1995) (holding that patient who brought action under ADA against doctor who refused to perform surgery on her, due to fact she was HIV-positive, would only have been entitled to injunctive relief had she established standing); *Mayberry v. Von Valtier,* 843 F.Supp. 1160, 1167 (E.D.Mich.1994) ("Plaintiff [is] not entitled to money damages under the ADA because [the statute] limits the remedies available to private individuals to those set forth in the Civil Rights Act of 1964."); *Aikins v. St. Helena Hospital,* 843 F.Supp. 1329, 1338 (N.D.Ca.1994) (finding that deaf woman who brought action under ADA against private hospital and physician based on her alleged inability to effectively communicate with hospital's staff during her husband's illness was entitled only to injunctive relief). Injunctive relief would not benefit this plaintiff, however.

■ Where compensatory damages are available, an individual can possess standing even if the injury for which he seeks relief is likely never to occur again. In contrast, to establish standing where only injunctive relief is available, the plaintiff must show the likelihood of encountering the alleged harm again. *Lyons,* 461 U.S. at 100, 103 S.Ct. at 1664; *Hoepfl,* 906 F.Supp. at 320. Plaintiff has since sought and received treatment from another doctor, Dr. Sturm, and has testified that he has no intention of seeking

---

6. Defendant argues, and the Court agrees, that compensatory damages would only be available if the civil action had been initiated by the Attor-

ney General who requested monetary damages. 42 U.S.C. § 12188(b)(2)(B); 28 C.F.R. § 36.504(a)(2).

further medical advice or treatment from Dr. Dyer. (Deposition of Vimal Jairath at 33, 50.) Thus, assuming for the sake of argument that defendant had discriminated against plaintiff, there is currently no "real or immediate threat" that defendant would discriminate against plaintiff again. Accordingly, an injunction would not offer any relief to plaintiff because there is no chance of future harm. As plaintiff's injury cannot be redressed through the means available to the Court, the Court concludes that plaintiff has no standing to pursue a claim under the ADA.

## IV. Discrimination under the ADA

■ Assuming, *arguendo*, that plaintiff did have standing to pursue a claim under Title III of the ADA, plaintiff has failed to demonstrate that defendant violated the statute by refusing to perform cosmetic surgery on plaintiff who is HIV positive[7] To establish liability under Title III of the ADA, a plaintiff must prove that he or she: 1) has a disability; 2) was discriminated against on the basis of that disability; 3) was thereby denied goods or services; 4) by the owner or operator of a place of public accommodation. 42 U.S.C. § 12182(a): Specifically, in the patient-physician context, the ADA plaintiff establishes a *prima facie* case if he can show: 1) that he has a disability; 2) that the physician's office is a place of public accommodation; 3) that he was denied full and equal medical treatment because of a disability; and 4) that under the circumstances, this denial gave rise to the inference that it was based solely on the patient's disability. *Mayberry v. Von Valtier*, 843 F.Supp. 1160, 1166 (E.D.Mich.1994). If a patient succeeds in establishing a *prima facie* case, the burden then shifts to his physician to prove either that the patient was not denied medical treatment, or that such denial was not unlawful. Id. at 1166. If the defendant physician carries his burden, the burden would then shift back to the patient to present evidence demonstrating that the physician's

reasons were merely a pretext for unlawful discrimination. *Id.*

■ The Court concludes that plaintiff has succeeded in establishing a *prima facie* case of discrimination under Title III of the ADA. Defendant concedes that plaintiff has a disability and that the physician's office is a place of public accommodation. In addition, it appears that plaintiff was denied full and equal medical treatment because of his HIV status.

■ Defendant, however, argues that his denial of medical treatment to plaintiff was not unlawful. Specifically, defendant contends that he refused to perform the cosmetic surgery plaintiff requested because the procedure posed a "direct threat" to plaintiff's health. Indeed, there is a distinction between refusing to treat a patient simply because of his HIV status, which is illegal under the ADA, and refusing to treat an HIV-positive patient for other legitimate reasons. *Compare Abbott v. Bragdon*, 912 F.Supp. 580, 585 (D.Me.1995) (finding that dentist's simple refusal to treat HIV positive patient was a violation of the ADA) with *Toney v. U.S. Healthcare*, 37 F.3d 1489 (3d Cir.1994), aff'g 840 F.Supp. 357, 360 (E.D.Pa. 1993) (finding that a patient failed to prove that his HIV-positive status was sole basis for doctor's refusal to treat him where doctor's refusal was the result of coverage termination by plaintiff's HMO and plaintiff's inability to afford treatment on his own).[8]

Dr. Dyer stated in his deposition that Mr. Jairath's HIV positive status renders him much more susceptible to infection as a result of Gore-Tex augmentation surgery than would otherwise be the case. (Deposition of Wallace Dyer, M.D. at 28.) Defendant also testified that this risk of infection, which is about thirty-five percent for people who are HIV positive, is "[w]ay too high an infection rate to risk with somebody with a compromised immune system." (*Id.*) The basis for Dr. Dyer's decision not to treat plaintiff is a

---

7. The relevant portion of the ADA provides:

   No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of accomodation.

42 U.S.C. § 12182(a).

8. The ADA is to be construed as consistent with the Rehabilitation Act of 1973. 42 U.S.C. § 12117(b).

medical article concerning Gore–Tex augmentation in cosmetic surgery. This article asserts that there is a higher infection rate for persons who are HIV-positive and receive Gore–Tex implants than for those who are HIV-negative.[9]

The ADA does not require a covered entity to extend its public accommodations to an individual where this would pose a "direct threat" or "significant risk of substantial harm to the health or safety of that individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r) (1984). The legality of defendant's medical decision not to treat plaintiff therefore depends on whether the cosmetic surgery actually posed a "direct threat" to plaintiff's health. The determination whether surgery poses a "direct threat" to a patient's health is based on a "[r]easonable medical judgment that relies on the most current medical knowledge or the most available objective evidence ... to ascertain: the nature, duration, severity of the risk; the probability that the potential injury will occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk." 29 C.F.R. § 1630.2(r) (1984); 28 C.F.R. § 36.208(c). *See also School Board of Nassau County v. Arline*, 480 U.S. 273, 287–88, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987) (employing similar factors in Rehabilitation Act, employment discrimination context).

Plaintiff essentially argues that the surgery did not pose a "direct threat" to his health. In so arguing, he attempts to show that defendant's reason for not treating plaintiff is merely a pretext for discrimination. He offers the testimony of two physicians in support of his argument. These physicians assert that a patient's sero–positivity does not automatically make him unsuitable for Gore–Tex augmentation surgery. (Pl. Resp. to Def. Mot. for Summ. J. [15]; at 13.) They also contend that the proper medical procedure in a case such as this one involves a "[t]horough examin[ation] [of] the individual and assess[ment] [of] the individual's immune system functioning." (Aff. of Ronald L. White, M.D. ¶ 6, attached to Pl. Resp. to Def. Mot. for Summ. J. [15]; Aff. of Bernie Short, M.D. ¶ 6, attached to Pl. Resp. to Def. Mot. for Summ. J. [15].) Thus, these physicians conclude that defendant should have determined plaintiff's specific immune status before deciding not to treat him.

These doctors, however, do not in any way assert that the surgery did not pose a "direct threat" to this plaintiff's health. In other words, they have not performed the very analysis which they contend Dr. Dyer should have performed before deciding against treating plaintiff. Moreover, the two physicians testifying on plaintiff's behalf fail to discuss any reasonable accommodations that defendant could have made in order to treat plaintiff. Thus, plaintiff has provided no evidence that the surgery did not pose a significant risk to his health. As such, he has failed to rebut defendant's nondiscriminatory reason for refusing to perform Gore–Tex augmentation surgery on him.

The expert testimony provided by plaintiff simply demonstrates that there are different opinions regarding whether Gore–Tex augmentation surgery can safely be performed on HIV-positive individuals. This dispute does not create a question of fact as to whether defendant unlawfully discriminated against plaintiff, however. Instead, the differing expert opinions illustrate that there is a range of legally acceptable bases upon which a doctor can predicate his decision whether to perform Gore–Tex augmentation surgery on an HIV-positive patient.

Defendant subscribes to the view that this type of operation should never be performed on an HIV-positive person, while the two doctors testifying for plaintiff are of the opinion that there must be an individualized assessment before such a decision is made. Because there appears to be medical support for both views, plaintiff has not

---

9. The article that defendant relies upon states that:

> Infection rates were significantly greater for those individuals with GoreTex shunts that had compromised immune systems than those with Gore–Tex shunts without compromised immune systems. The rate in that study was two to two-and-a half times higher for those individuals with compromised immune systems than those who had a normal immune system. (Dyer Depo. at 30.)

shown that defendant failed to use the "most current medical knowledge or the most objective evidence" in making the decision not to treat plaintiff. To be sure, one method is objectively more cautious than the other. The Court, however, cannot choose between two ostensibly acceptable methods given that "[c]onsiderable judicial deference should be paid to the [medical expert himself], absent proof that standards and application of them serve no purpose other than to deny [a benefit] to handicapped persons." *Doe v. New York University*, 666 F.2d 761, 776 (2nd Cir. 1981).

In this case, plaintiff has offered no evidence indicating that defendant unlawfully discriminated against plaintiff because of his disability. Rather, the evidence shows that defendant chose not to expose plaintiff to the much higher risk of infection that accompanies the performance of this type of surgery on HIV-positive patients. Indeed, Dr. Dyer has treated HIV-positive patients in the past who sought cosmetic surgery of a different type than that sought by plaintiff. (Dyer, Depo., at 28.) [10] Defendant based his decision not to operate on plaintiff on medical literature documenting the actual risks that Gore–Tex augmentation surgery poses to HIV-positive individuals. This is not unlawful discrimination. *Anderson v. University of Wisconsin*, 841 F.2d 737, 740 (7th Cir. 1988) ("The Rehabilitation Act forbids discrimination based on stereotypes about a handicap but does not forbid decisions based on the actual attributes of the handicap.").

The Court finds no reason to penalize a doctor for exercising caution in his medical judgments. Use of caution in making medical decisions is to be distinguished from situations in which doctors blatantly discriminate against patients. *Cf. United States v. Morvant*, 898 F.Supp. 1157, 1163 (E.D.La.1995) (granting plaintiff's motion for summary judgment on grounds that dentist's referral of one patient with AIDS and another patient who was HIV-positive to another dentist on

basis that he was not specialist was pretext for discrimination because teeth cleaning sought by patients was not outside area of dentist's specialization). Accordingly, the Court concludes that defendant's belief that Gore–Tex augmentation surgery would pose a "direct threat" to plaintiff's health was reasonable as a matter of law. As plaintiff has failed to present evidence to rebut defendant's legitimate nondiscriminatory reason, summary judgment would be appropriate on this ground as well.

### CONCLUSION

For the foregoing reasons, defendant's Motion For Summary Judgment [15] is **GRANTED**. The Court specifically finds that plaintiff lacks standing to pursue his ADA claim, and that, even if plaintiff did have standing, summary judgment is still appropriate because he is unable to rebut defendant's nondiscriminatory reason for refusing to perform the desired surgery. The clerk is hereby directed to close this case.

---

F.3d 1489 (3d Cir.1994), *aff'g* 840 F.Supp. 357, 360 (E.D.Pa.1993) (holding that patient failed to prove that fact that he was infected with HIV was sole basis for doctor's refusal to treat him because patient did not contest doctor's affidavit stating that doctor had other HIV-positive patients).