**THIRD DIVISION
DOYLE, P. J.,
MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 30, 2025**

# In the Court of Appeals of Georgia

A25A0466. THE ARDENT COMPANIES, LLC et al. v. CITY OF
   BROOKHAVEN et al.

MARKLE, Judge.

In the second appearance of this case before this Court,[1] The Ardent Companies, LLC, Ardent Acquisitions, LLC (collectively, "Ardent"), John Wheeler, and Courtney Wheeler (all together, "Plaintiffs") appeal from the trial court's grant of summary judgment on their claims for tortious interference with business and contractual relations against John A. Ernst, Jr., the mayor of Brookhaven, and Christian M. Sigman, the city manager (collectively, "Defendants"), in their

---

[1] See *City of Brookhaven et al. v. The Ardent Companies, LLC et al.*, Case No. A22A1540, 366 Ga. App. XXVII (Dec. 28, 2022).

individual capacities. Because we agree with the trial court that Defendants were entitled to official immunity, we affirm.

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law. We review de novo the trial court's ruling on a motion for summary judgment.

(Citation omitted.) *Marshall v. Browning*, 310 Ga. App. 64, 64-65 (712 SE2d 71) (2011).

So viewed, the record shows that Ardent sought to develop a townhome community on property including the right-of-way at Bramblewood Drive in Brookhaven, and subsequently entered into purchase agreements with 32 homeowners, including the Wheelers. The purchase agreements were contingent upon Ardent obtaining rezoning approval, which it sought. In order to develop the property as intended, Ardent also requested the City's abandonment of Bramblewood Drive.

Thereafter, the city manager determined that a portion of the property should be used for a police station, and he sent an e-mail to Ardent indicating that the City was offering to purchase six of the homes from Ardent at a five percent premium over

what Ardent had offered to pay the homeowners. At that time, the city manager was unaware of Ardent's purchase price for these homes, but assumed it was fair market value. And the city manager made this offer without direction from the city council. The city manager also disclosed to Ardent that the City intended to contact the six homeowners to establish purchase options should Ardent's contracts on those homes expire.

With regard to the abandonment of the road, Ardent submitted an appraisal concluding that its fair market value was $250,000 per acre, or $500,000 total for the two acre tract. During the course of the negotiations over the value of the road, the city manager directed another staff member to issue a letter notifying Ardent that the city administration would not recommend abandoning the road. Without ordering an appraisal, the city manager deemed the entire tract worth $3,000,000, and recommended this purchase price to the mayor and the city council.

When the parties could not agree on the value of the road, the city manager conveyed to Ardent that the city council "would reconsider its position" if Ardent would propose a mixed-use development with an affordable housing allotment. Ardent submitted a proposal, but the parties were unable to agree on economic incentives and

the number of affordable housing units. The mayor, with the city manager's assistance, drafted a letter to the homeowners who had signed Ardent's purchase contracts, expressing the City's view on the course of the failed deal. Ultimately, Ardent's purchase contracts expired. The city council voted to deny the road abandonment application, and Ardent withdrew its zoning application.

Relying on the contingent purchase agreement, the Wheelers relocated out of state. When the contract expired, the Wheelers were unable to sell the house on the open market, and resorted to renting it.

Plaintiffs then sued the City, Defendants, and the city council members, in their official and individual capacities, bringing claims for tortious interference with business and contractual relationships, violations of OCGA § 36-33-4,[2] and punitive damages, amongst various other claims. The matter proceeded to trial and a jury found that the City, the mayor, and the city manager tortiously interfered with Ardent's business and contractual relations, and awarded Ardent over $5,000,000 on these counts, in addition to punitive damages and attorney fees. The jury also found

---

[2] OCGA § 36-33-4 provides: "Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."

4

that these parties had tortiously interfered with the Wheeler's business and contractual relations, and awarded them $220,000, in addition to punitive damages and attorney fees. The jury found in favor of all of the defendants on the claims under OCGA § 36-33-4. And, the trial court granted a directed verdict in favor of the council members on the tortious interference claims.

The City, and Defendants appealed, contending that the trial court erred in concluding that the City had waived its sovereign immunity, and by applying an incorrect analysis in admitting other acts evidence. We reversed the trial court's judgment on sovereign immunity grounds, concluding that the City and the Defendants, in their official capacities, were immune from suit; and we remanded the case to the trial court to apply the correct analysis regarding the other acts evidence.

On remand to the trial court, Defendants filed a renewed motion for summary judgment, asserting their entitlement to official immunity to the remaining claims for tortious interference with business and contractual relations, raised against them in their individual capacities. The trial court granted the motion, and this appeal followed.

1. Plaintiffs argue that Defendants were not entitled to official immunity because they were acting beyond the scope of their authority, and the trial court improperly weighed the evidence in determining there were no questions of fact as to this issue.[3] We disagree.

Whether a public officer or employee is protected by official immunity is a question of law, and our review is de novo. *Lowe v. Etheridge*, 361 Ga. App. 182 (862 SE2d 158) (2021). As we have explained, "[t]he rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." (Citation omitted.) *Roberson v. McIntosh County School Dist.*, 326 Ga. App. 874, 877 (1) (755 SE2d 304) (2014).

---

[3] To the extent Plaintiffs contend the trial court erred by revisiting the official immunity issue after initially denying Defendants' motions for summary judgment and for directed verdict on this ground, the trial court committed no error. "[T]rial courts, while a cause is pending before them, have control over the record and proceedings, their orders and judgments, during the term; and after the term if the cause is still pending before them, and may amend or set them aside."(Citations and punctuation omitted.) *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 235 (1) (659 SE2d 668) (2008); see *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 344 (1) (568 SE2d 559) (2002) ("This Court has repeatedly held that it is within the discretion of a trial judge to consider a renewed motion for summary judgment even without an expansion of the record. There is nothing in OCGA § 9–11–56 limiting the number of times a party may make a motion for summary judgment.") (citations and punctuation omitted).

Under Georgia law, official or qualified immunity is an entitlement not to stand trial rather than a mere defense to liability. The issue of a government employee's official immunity must therefore be resolved as the threshold issue in a suit against the employee in his personal capacity. . . . [Official] immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.[4] Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.

(Citations and punctuation omitted.) *Roberson*, 326 Ga. App. at 876-877 (1); *Marshall*, 310 Ga. App. at 67.

Under the Georgia Constitution, public officers may be subject to suit for negligence in performing ministerial duties, and "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the

---

[4] The parties do not dispute that Defendants' acts are discretionary in nature. See *Roberson*, 326 Ga. App. at 877 (1) ("A discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.") (citation omitted).

performance of their official functions." Ga. Const. of 1983, Art. I, Sec. 2, Par. IX (d).[5]

"The term 'official functions' means any act performed within the officer's or employee's scope of authority, including . . . discretionary acts." (Citation and punctuation omitted.) *Siegrist v. Herhold*, 365 Ga. App. 828, 830 (880 SE2d 336) (2022); see also *Gilbert v. Richardson*, 264 Ga. 744, 753 (6) (452 SE2d 476) (1994). With these standards in mind, we turn to the merits of Plaintiffs' claims of error.

(a) Plaintiffs first contend that the trial court wholly ignored the requirement that, in order for official immunity to apply, Defendants must have acted within the scope of their authority. To the contrary, the trial court specifically found that the city manager was authorized to locate properties as required by the City and to negotiate their purchase on behalf of the City. Although the trial court made no such express finding as to the mayor, there is no indication that the trial court applied an incorrect standard as to this factor or failed to consider it entirely.[6] See *Benchmark Rehabilitation*

---

[5] Although Paragraph IX refers specifically to the State, our Supreme Court has "held that [it] applies to municipalities and their employees." *Wyno v. Lowndes County*, 305 Ga. 523, 533 (824 SE2d 297) (2019) (J. Nahmias, concurring).

[6] Defendants argued below that they were acting within the scope of their authority because the letter to the homeowners was issued by Ernst in his official capacity as mayor, and Sigman negotiated with Ardent in his official capacity as city manager under the authority of the city council.

*Partners v. SDJ Logistics*, 367 Ga. App. 203, 205 (3) (885 SE2d 224) (2023) ("Absent a showing to the contrary, we presume that the trial court made all required findings, even if the required findings are not specifically set out in the order.") (citations and punctuation omitted). Notably, the trial court cited to the correct standard, stating that official immunity applies to the discretionary acts of public employees "taken within the scope of their official authority, *and* done without wilfulness, malice, or corruption." (Emphasis supplied.) See *Razavi v. Emily*, 371 Ga. App. 878, 882 (3) (903 SE2d 153) (2024) ("It is well settled that we presume, absent some indication otherwise in the record, that trial judges know the law and apply it in making their decisions."). And, Plaintiffs make no showing that the trial court failed to apply this standard to Defendants.

(b) Plaintiffs next argue that the trial court improperly weighed or ignored evidence regarding Defendants' improper conduct, and that this evidence raises a triable issue as to whether Defendants acted outside the scope of their official authority. We are not persuaded.

Plaintiffs rely on *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996), to support their position that evidence tending to show a defendant acted "improperly

and without privilege" raises a question of fact as to official immunity. Id. at 824 (1). But this reliance is misguided.

Notably, the term, "act[ing] improperly and without privilege," refers to an element of a claim for tortious interference, not to a factor in determining official immunity. *Gaskins*, 219 Ga. App. at 824 (1), 825 (2). Nevertheless, in *Gaskins,* we concluded that there was a question of fact as to whether the mayor was acting within his authority as mayor when he ordered sanitation workers to stop taking their breaks at a local store. Id. at 824 (1), 825 (2). This conclusion, however, turned on the fact that there was direct evidence of the mayor stating he would "get even with [the store owner] and put him out of business." Id. at 824-825 (1). There is no evidence of any such personal vendetta, here, that would raise a question of fact as to whether Defendants were acting beyond the scope of their official authority.[7]

---

[7] Briefly contending that there was evidence of Defendants' actual malice, Plaintiffs point to the mayor's trial testimony, admitting that he did not like Ardent's operating manager and had used some disparaging terms to describe him. This evidence amounts to mere name-calling. It raises no issue as to whether Defendants were acting within their scope of authority at the relevant times. Nor does it rise to the level of actual malice. See *Hall v. Acker*, 367 Ga. App. 411, 417 (2) (885 SE2d 266) (2023) ("An intent to deliberately harm must be shown, and frustration, irritation, and possibly even anger are not sufficient to penetrate official immunity.") (citation and punctuation omitted).

Moreover, whether an official was acting within the scope of his authority generally does not turn on the impropriety or the illegality of the official's acts at issue, but on whether the official was in the process of exercising his discretion at the relevant time. See, e.g., *Mommies Properties v. Semanson*, 366 Ga. App. 153, 161 (4) (b) (ii) (880 SE2d 376) (2022) (county soil inspector was acting within scope of official authority even if he should have asked permission from property owner or obtained warrant prior to entering property for purposes of an inspection); *Qenkor Constr. v. Everett*, 333 Ga. App. 510, 522 (3) (d) (773 SE2d 821) (2015) (as to conversion claim, sheriff was exercising his discretion during execution of search warrant even though warrant did not authorize his seizure and retention of cash); *Morton v. McCoy*, 204 Ga. App. 595, 596 (3) (420 SE2d 40) (1992) (as to trespass claim, code enforcement officer was acting within scope of official duties when entering property and taking photographs during code violation investigation, despite allegation that he "was motivated by an improper relationship" with the neighbor).

Although Plaintiffs contend the trial court ignored their litany of evidence purportedly showing that Defendants acted improperly, they point to no evidence to

show the Defendants were *not* acting within the scope of their authority as mayor and city manager when these acts occurred. Specifically, Plaintiffs take issue with the city manager's conduct in negotiating the City's purchase of the portion of the property for the police station, the value of the road, and the alternate development plan;[8] and directing staff to notify Ardent that the administration would not recommend the road abandonment, in noncompliance with a local ordinance. As to the mayor, Plaintiffs point to his involvement in, or approval of, the city manager's negotiations; his failure to disclose he was involved in a real estate business with one of the property owners; and drafting the letter, which included several alleged misrepresentations, to the property owners regarding the course of the negotiations.

Even if we were to assume Defendants' conduct in these dealings was improper, Plaintiffs have not shown that they were acting *beyond the scope* of their

---

[8] With respect to the negotiations involving the alternate development plan, Plaintiffs cite to *City of Buford v. Ward*, 212 Ga. App. 752 (443 SE2d 279) (1994) to support their contention that the City had unfettered discretion to require Ardent to submit the plan because there was no ordinance setting out the rules for any such plan. But that case is distinguishable in that it does not address official immunity and, unlike the negotiations at issue here, involved a cause of action under OCGA § 36-33-4 for the denial of a certificate of occupancy based on a city policy that lacked specific guidelines. Id. at 754 (1).

official authority as city manager and mayor at the relevant times.[9] See *Mommies Properties*, 366 Ga. App. at 161 (4) (b) (ii); *Qenkor Constr.*, 333 Ga. App. at 522 (3) (d); *Morton*, 204 Ga. App. at 596 (3). Notably, the city manager's authority includes supervising staff and negotiating contracts on the City's behalf. And, it goes without saying that a mayor's authority includes communicating with his constituents. Moreover, and getting to the very heart of this matter, Defendants, as government officials, were obligated to negotiate the best price for the sale of the City's property. See *West v. Fulton County*, 267 Ga. 456, 458 (1), n. 2 (479 SE2d 722) (1997) (regarding the sale of county property under OCGA § 36-9-2). Accordingly, Plaintiffs fail to show that there were issues of fact regarding Defendants' official authority; thus, the trial court's grant of summary judgment on this issue was correct.

---

[9] In their reply brief, Plaintiffs cite to *Bateast v. Dekalb County*, 258 Ga. App. 131 (572 SE2d 756) (2002); however, this case is inapposite to the issue at hand. There, we concluded there was an issue of fact as to actual malice, without considering whether the officer's conduct was beyond the scope of his authority. Id. at 132. Plaintiffs' reliance on *Farr v. Daling*, 684 FSupp.3d 1322 (N.D. Ga. 2023), is similarly unfounded; the court, there, concluded that plaintiffs had sufficiently pled actual malice on certain state law claims, such that they survived a motion to dismiss. Id. at 1337-1339 (III) (E) (1), (2).

2. In light of our ruling above, we do not reach Plaintiffs' remaining claims of error.

*Judgment affirmed. Doyle, P. J., and Padgett, J., concur.*